LEXSEE



Caution
As of: Feb 21, 2011

AVENTIS PHARMA, Petitioner, - against - WYETH, Respondent.

Case. No. M-19-70

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF
NEW YORK

2009 U.S. Dist. LEXIS 105422

November 6, 2009, Decided
November 9, 2009, Filed

CORE TERMS: subpoena, license, ex parte, Wyeth
Memo of Law, termination

JUDGES: [*1] DEBORAH A. BATTS, United States
District Judge.

OPINION BY: DEBORAH A. BATTS

OPINION

*Memorandum and Order*

DEBORAH A. BATTS, United States District Judge.

Before the Court is a Motion by Petitioner Aventis
Pharma ("Aventis") to compel Respondent Wyeth
("Wyeth") to produce certain documents pursuant to a 28
U.S.C § 1782 subpoena (the "Subpoena") issued, *ex
parte*, in an order by the Part I U.S. District Judge on
September 18, 2009. Wyeth opposes Aventis' Motion and
moves to either vacate the Order, quash the Subpoena or
obtain a protective order.

By contract dated October 12, 2000, Aventis granted
Wyeth a license to its rights relating to a certain hormone
therapy product called trimegestone (the "License
Agreement"). (Garaud Decl. PP 7-8.) In 2003, Wyeth
decided to terminate the parties' License Agreement;

Aventis opposed termination. (*Id.* P 12.) On August 17,
2004, Aventis commenced an action against Wyeth in the
French Tribunal de Commerce de Nanterre (the "French
Tribunal") for breach of contract due to Wyeth's
termination of the License Agreement. (*Id.* P 2.) On
January 13, 2009, the French Tribunal denied Aventis'
claims based on factual findings. (*Id.*) On February 25,
2009, Aventis appealed the French Tribunal's [*2] ruling
to the Cour d' Appel de Versailles. (*Id.*) On September
18, 2009, over five years after the litigation was first filed
in the French Tribunal, Aventis applied, *ex parte*, for
issuance of a Subpoena pursuant to 28 U.S.C. § 1782 (the
"Application"). (*See* Aventis *ex parte* Application and
Order of Judge Pauley, filed September 18, 2009.) The
Application was granted the same day by U.S. District
Judge William H. Pauley, who was sitting as the Part I
judge. In the Cour d' Appeal, Aventis' reply brief is due
on December 3, 2009 and further briefs and exhibits are
due on January 7, 2010. (*See* Aventis Letter, dated
November 5, 2009.)

There are myriad reasons for denying Aventis'
Application. First, despite the fact that it appears that the
French Court has the jurisdictional reach over these
documents, in five years, Aventis has never sought the
subject § 1782 documents in the French Tribunal.
Regardless of whether Aventis could have gotten the
French Courts to compel production of the documents

2009 U.S. Dist. LEXIS 105422, *2

now sought, Aventis' motion is clearly an attempt to circumvent foreign proof gathering restrictions that were contractually provided for by the parties' in the choice of forum (France) clause. [*3] (Wyeth Memo. of Law at 20.) These sophisticated parties freely chose the French forum with all its requisite procedural rules.

Second, Avantis' Application is untimely given the current procedural posture of the case before the French Courts. Granting Aventis' Application would frustrate, rather than promote, the twin aims of § 1782: "'providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts.'" *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 84 (2d Cir. 2004) (quoting *In re Malev*, 964 F.2d 97, 100 (2d Cir. 1992)). Put simply, this Court would not be providing "efficient means of assistance" to the litigants or the French Courts by allowing Aventis to rush to a U.S Court on the eve of an appeal in hopes of obtaining discovery it could have requested in this same Court starting over five years ago.

Further, as Wyeth points out, the collection, review and production of Avantis' expansive document requests can not happen quickly in the modern electronic age. (Wyeth Memo of Law at 8.) Even if the parties proceed with the utmost diligence [*4] and good faith to get the production completed, there will likely be disagreement over the documents at issue which will add additional time for completion of the production. This Court sees no reason why it should support Aventis in seeking to compel Wyeth to participate in a "fire drill" over documents when the French appeal is currently pending. Since the timing of Aventis' request places a burden on Wyeth so great that they can not produce the requested documents in time for the French appeal, the documents requested are not available for use in the French proceedings. *In re Application of Microsoft Corp.*, 428 F.Supp.2d 188, 192-93 (S.D.N.Y. 2006) (citing *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65, 124 S. Ct. 2466, 159 L. Ed. 2d 355 (2004)). It should be noted that the small extension for briefing recently granted by the Cour d' Appeal has no affect on this analysis.

The Court is not convinced that at this late hour, Aventis is entitled to the documents it seeks from Wyeth under § 1782. For the reasons set forth above, Aventis' Motion to compel is DENIED in its entirety and Wyeth's Motion to Quash the Subpoena is GRANTED. The Clerk of the Court is directed to close the docket in this matter.

SO [*5] ORDERED

DATED: New York, New York

November 6, 2009

/s/ Deborah A. Batts

DEBORAH A. BATTS

United States District Judge

Southern District of New York

LEXSEE



Positive
As of: Feb 21, 2011

**Peter F. Barry, on behalf of himself and all others similarly situated, Plaintiffs, v.
Dell Computer Corporation, Defendant.**

**Civil File No. 00-939 MJD/JGL**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MINNESOTA**

**2000 U.S. Dist. LEXIS 20630**

**October 18, 2000, Decided
October 18, 2000, Filed**

**DISPOSITION:**      [*1] Plaintiff's motion to remand
action to state court GRANTED.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff alleged defendant
violated provisions of the Telephone Consumer
Protection Act (TCPA), 47 U.S.C.S. § 227. Plaintiff filed
the original class action complaint in state court.
Defendant removed the action, claiming the jurisdictional
requirements were met because the TCPA granted
concurrent federal and state jurisdiction, and the
complaint presents a federal question, pursuant to 28
U.S.C.S. § 1331. Plaintiff moved to remand.

**OVERVIEW:** Plaintiff brought a class action under the
Telephone Consumer Protection Act (TCPA). After
removal to state court, plaintiff sought remand. The court
granted the motion, finding it lacked jurisdiction. The
text of 47 U.S.C.S. § 227 made no mention of federal
jurisdiction. In combination with the general presumption
against federal jurisdiction, the silence in the case
dictated a finding of exclusive state jurisdiction.
Concurrent jurisdiction of state courts was presumed.
Congress intended the TCPA to create a cause of action
for litigation at the state level. Thus, the 28 U.S.C.S. §
1331 did not provide federal jurisdiction for private

causes of action under the TCPA.

**OUTCOME:** Plaintiff's motion to remand action to state
court was granted.

**CORE TERMS:** federal jurisdiction, private cause of
action, consumers, federal question, state jurisdiction,
cause of action, grant of jurisdiction, private actions,
concurrent, inferior, federal law, federal statute,
jurisdictional, unsolicited, presumed, removal, dictate,
hear, Act TCPA, matter jurisdiction, federal cause of
action, concurrent jurisdiction, civil action, express
language, exclusive jurisdiction, equal protection,
classification, advertisements, commandeering, rationally

**LexisNexis(R) Headnotes**

*Civil Procedure > Jurisdiction > Jurisdictional Sources
> Statutory Sources*
*Civil Procedure > Jurisdiction > Subject Matter
Jurisdiction > General Overview*
*Civil Procedure > Removal > Basis > General Overview*
[HN1]28 U.S.C.S. § 1441 allows a defendant to remove a
civil action brought in state court to federal court if the
action is one over which the federal district court has
original jurisdiction. The party invoking the removal

2000 U.S. Dist. LEXIS 20630, *1

statute bears the burden of establishing federal jurisdiction. Courts must strictly construe the removal statute against the party seeking removal.

*Civil Procedure > Jurisdiction > Jurisdictional Sources > Statutory Sources*
*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > Exclusive Jurisdiction*
*Communications Law > Privacy > Telephone Consumer Protection Act*
[HN2]The Telephone Consumer Protection Act (TCPA), 47 U.S.C.S. § 227, created in 1991, prohibits the use of certain telecommunications technology to forward unsolicited advertisements to consumers. Among other things, the act makes it unlawful for any party to send unsolicited facsimile advertisements to potential customers, and creates a private cause of action for victims of the practice. The TCPA also provides treble damages for willing or knowing violations of the act. 47 U.S.C.S. § 227 (b)(3).

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > Concurrent Jurisdiction*
*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > Exclusive Jurisdiction*
*Communications Law > Privacy > Telephone Consumer Protection Act*
[HN3]The Telephone Consumer Protection Act, 47 U.S.C.S. § 227, creates exclusive jurisdiction in state courts.

*Constitutional Law > Congressional Duties & Powers > General Overview*
*Governments > Federal Government > U.S. Congress*
*Governments > Legislation > Interpretation*
[HN4]Only the United States Supreme Court derives federal judicial power from the Constitution; all inferior courts must be established by Congress. U.S. Const. art. III. In creating a new cause of action, Congress has the authority to limit the jurisdiction of those inferior courts. In the absence of language explicitly limiting jurisdiction, the court must rely on Congressional intent to determine if the statute grants federal jurisdiction over a private cause of action. The text of the statute provides the basis for divining Congressional intent.

*Communications Law > Privacy > Telephone Consumer Protection Act*
[HN5]See 47 U.S.C.S. § 227(b)(3).

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > General Overview*
*Communications Law > Privacy > Telephone Consumer Protection Act*
[HN6]Federal courts are only competent to hear those cases specifically authorized; silence will not provide the jurisdiction. In combination with the general presumption against federal jurisdiction, the silence in 47 U.S.C.S. § 227 dictates a finding of exclusive state jurisdiction.

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > General Overview*
*Communications Law > Federal Acts > Communications Act > Remedies*
*Communications Law > Privacy > Telephone Consumer Protection Act*
[HN7]Commonly accepted canons of statutory interpretation dictate that statutory provisions should be read in reference to the whole act. Subsequent provisions of the Telephone Consumer Protection Act, 47 U.S.C.S. § 227, grant exclusive federal jurisdiction to states bringing civil actions for remedies of the Act. 47 U.S.C.S. § 227 (f)(2).

*Civil Procedure > Jurisdiction > Jurisdictional Sources > Statutory Sources*
*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Federal Questions > General Overview*
*Constitutional Law > The Judiciary > Jurisdiction > Federal Questions*
[HN8]The scope of jurisdiction granted under 28 U.S.C.S. § 1331 is narrower than the constitutional grant of jurisdiction. In addition to demonstrating that the action arises under federal law, the moving party must show that § 1331 jurisdiction is not precluded by a statute vesting jurisdiction elsewhere. Congress has the power to assign jurisdiction to courts other than the inferior federal courts.

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Federal Questions > General Overview*
[HN9]Usually, a federal question exists if federal law creates the cause of action. In certain circumstances,

however, the United States Supreme Court has found that even statutes which create a cause of action do not create a federal cause of action.

*Communications Law > Privacy > Telephone Consumer Protection Act*
*Constitutional Law > Congressional Duties & Powers > Reserved Powers*

[HN10]The Tenth Amendment prohibits Congress from commandeering state resources. By creating a federal right and requiring the states to enforce the federal law, the Telephone Consumer Protection Act, 47 U.S.C.S. § 227, does not commandeer the states' resources but rather provides a mechanism by which private causes of action may be brought in state courts. State courts are already bound to enforce federal claims when a cause of action exists. U.S. Const. art. VI.

*Communications Law > Privacy > Telephone Consumer Protection Act*
*Governments > Federal Government > U.S. Congress*

[HN11]The Telephone Consumer Protection Act (TCPA), 47 U.S.C.S. § 227, does not require the states to hear the private causes of action unless it is permitted by the laws or rules of court of a state. 47 U.S.C.S. § 227(b)(3). The states therefore retain the ultimate decision whether or not to permit the suits to be brought in state court. Rather than commandeering state resources, this arrangement respects the states' sovereignty: Congress enacted the TCPA to assist states where they lacked jurisdiction; it empowered states themselves to enforce the TCPA in federal court; it authorized private enforcement exclusively in state courts; and it recognized state power to reject Congress' authorization.

*Communications Law > Privacy > Telephone Consumer Protection Act*
*Communications Law > U.S. Federal Communications Commission > Standards of Review*
*Constitutional Law > Equal Protection > Level of Review*

[HN12]Exclusive state jurisdiction does not violate the Fifth Amendment equal protection guarantee. U.S. Const. amend. V. While certain states may opt not to adopt state laws permitting these private actions, the substantive right to be free from unsolicited faxes remains enforceable by state attorneys general or the Federal

Communications Commission regardless of the availability of a private cause of action. Furthermore, the classification is not based on a fundamental right or impermissible characteristic, and thus is subject only to rational basis review. Under this standard, the legislative classification is presumed valid if it is rationally related to a legitimate governmental interest. Permitting states to decide whether or not to enact enabling legislation is rationally related to Congress' legitimate interest in not overburdening federal and state courts with millions of potential claims, and thus the equal protection guarantee is not violated.

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > Exclusive Jurisdiction*
*Communications Law > Privacy > Telephone Consumer Protection Act*

[HN13]The Telephone Consumer Protection Act, 47 U.S.C.S. § 227, grants exclusive jurisdiction for private rights of action to state courts.

**COUNSEL:** Thomas J. Lyons, Jr., Consumer Justice Center, P.A., on behalf of Plaintiffs.

Brian B. O'Neill, William L. Underwood, Faegre & Benson, L.L.P., on behalf of Defendant.

**JUDGES:** Michael J. Davis, United States District Court Judge.

**OPINION BY:** Michael J. Davis

**OPINION**

**ORDER**

This matter is before the Court on Plaintiff's motion to remand this action to state court. In the underlying claim, Plaintiff alleges that Defendant violated certain provisions of the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227. Plaintiff filed the original Class Action Complaint in the 2d Judicial Circuit, Ramsey County, Minnesota. Defendant removed the action to federal court pursuant to 28 U.S.C. § 1441, claiming that the jurisdictional requirements are met because the TCPA grants concurrent federal and state jurisdiction, and the complaint presents a federal question, pursuant to 28 U.S.C. § 1331. Plaintiff now

moves to remand. For the reasons stated below, the Court grants Plaintiff's motion.

Background

[HN1]28 U.S.C. § 1441 allows a defendant [*2] to remove a civil action brought in state court to federal court if the action is one over which the federal district court has original jurisdiction. The party invoking the removal statute bears the burden of establishing federal jurisdiction. Hunter v. United Van Lines, 746 F.2d 635, 639 (9th Cir. 1984), cert. den., 474 U.S. 863, 88 L. Ed. 2d 150, 106 S. Ct. 180 (1985). Courts must strictly construe the removal statute against the party seeking removal. Id.

The unusual question presented is whether a federal statute, the Telephone Consumer Protection Act, (TCPA) creates jurisdiction for private actions exclusively in state courts. [HN2]The TCPA, created in 1991, prohibits the use of certain telecommunications technology to forward unsolicited advertisements to consumers. Among other things, the act makes it unlawful for any party to send unsolicited facsimile advertisements to potential customers, and creates a private cause of action for victims of the practice. The TCPA also provides treble damages for willing or knowing violations of the act. 47 U.S.C. § 227 (b)(3).

Plaintiff argues that the express language of the act [*3] grants exclusive jurisdiction to states to hear private actions under the TCPA, and by omitting any mention of federal courts, precludes federal jurisdiction. Defendant argues that federal jurisdiction is presumed when a federal statute creates a private cause of action, unless the statute expressly grants jurisdiction solely to state courts.

This is a matter of first impression in this circuit. The first court to consider this question, the district court for the Southern District of Indiana, held that the TCPA conferred concurrent jurisdiction upon both state and federal courts. Kenro, Inc. v. Fax Daily, Inc., 904 F. Supp. 912 (S.D.Ind. 1995). Since that decision, every federal court of appeals faced with this question has found that [HN3]the TCPA creates exclusive jurisdiction in state courts. Murphey v. Lanier, 204 F.3d 911 (9th Cir. 2000); Erienet, Inc. v. Velocity Net, Inc., 156 F.3d 513 (3d Cir. 1998); Foxhall Realty Law Offices v. Telecommunications Premium Services, Ltd., 156 F.3d 432 (2d Cir. 1998); Nicholson v. Hooters of Augusta, Inc., 136 F.3d 1287 (11th Cir. 1998); Int'l Science &

Tech. Inst., Inc. v. Inacom Communications Inc., 106 F.3d 1146 (4th Cir. 1997); [*4] Chair King, Inc. v. Houston Cellular Corp., 131 F.3d 507 (5th Cir. 1997). For the following reasons, this Court agrees with the Circuit decisions.

Discussion

[HN4]Only the United States Supreme Court derives federal judicial power from the Constitution; all inferior courts must be established by Congress. U.S. Const. art. III. In creating a new cause of action, Congress has the authority to limit the jurisdiction of those inferior courts. See Sheldon v. Sill, 49 U.S. (8 How.) 441, 12 L. Ed. 1147 (1850)(requiring specific grant of jurisdiction to federal courts); Kline v. Burke Construction Co, 260 U.S. 226, 67 L. Ed. 226, 43 S. Ct. 79 (1922); Int'l Science, 106 F.3d at 1154 (gathering statutes).

In the absence of language explicitly limiting jurisdiction, the Court must rely on Congressional intent to determine if the statute grants federal jurisdiction over a private cause of action. The text of the statute provides the basis for divining Congressional intent. Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 138, 112 L. Ed. 2d 474; 111 S. Ct. 478 (1990). The pertinent part of the TCPA provides: [*5] [HN5]

3) Private right of action

A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State--

A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,

B) an action to recover for actual monetary loss from such a violation, or to receive $ 500 in damages for each such violation, whichever is greater, or

C) both such actions.

The text makes no mention of federal jurisdiction. Defendant argues that explicit reference to federal jurisdiction is not necessary, because merely by creating

a cause of action, the statute creates a *federal* cause of action. However, [HN6]federal courts are only competent to hear those cases specifically authorized; silence will not provide the jurisdiction. See Sheldon, 49 U.S. at 449; Int'l Science, 106 F.3d at 1152. In combination with the general presumption against federal jurisdiction, the silence in this case dictates a finding of exclusive state jurisdiction. See Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377, 128 L. Ed. 2d 391, 114 S. Ct. 1673 (1994). [*6]

When the provision is read in conjunction with other portions of the statute, Congressional intent becomes even clearer. [HN7]Commonly accepted canons of statutory interpretation dictate that statutory provisions should be read in reference to the whole act. See Smith v. U.S., 508 U.S. 223, 235, 124 L. Ed. 2d 138, 113 S. Ct. 2050 (1993). Subsequent provisions of the TCPA grant exclusive federal jurisdiction to states bringing civil actions for remedies of the Act. 47 U.S.C. § 227 (f)(2); see Int'l Science, 106 F.3d at 1152. Equally significant is the fact that the Communications Act, which the TCPA amends, provides explicitly for concurrent or exclusive federal jurisdiction in six different sections of the statute. See 47 U.S.C. §§ 214(c), 407, 415(f), 553(c)(1), 555(a) and 605(e)(3)(A). This explicit grant of jurisdiction in the same statute indicates an awareness on Congress' part of the jurisdictional possibilities, and a decision not to grant federal jurisdiction over private actions. See Chair King, 131 F.3d at 512; Foxhall Realty, 156 F.3d at 436. When Congress intended [*7] to authorize federal jurisdiction, it did so.

The legislative history of this provision supports the inference that Congress wanted to provide a readily accessible forum for victims in state courts. Senator Hollings described the purpose of § 227(3):

> "The ....private right-of-action provision....will make it easier for consumers to recover damages from receiving these computerized calls. The provision would allow consumers to bring an action in State court against any entity that violates the bill. The bill does not, because of constitutional constrains, dictate to the States which court in each State shall be the proper venue for such an action, as this is a matter for State legislators to determine. Nevertheless, it is

my hope that States will make it as easy as possible for consumers to bring such actions, preferably in small claims court. 137 Cong. Rec. S16205-06 (Nov. 7, 1991)(statement of Sen. Hollings).

This Court agrees with the reasoning of the Fourth Circuit that the "clear thrust of his statement was consistent with the bill's text that state courts were the intended fora for private TCPA actions." Int'l Science, 106 F.3d at 1153. Congressional [*8] findings indicate a recognition that state regulation of telemarketing activity was ineffective because it could be avoided by interstate operations, and therefore federal legislation was necessary. See Pub. L. 102-243 (7), § 2; Erienet, 156 F.3d at 518.

Defendant argues that because the express language of the text does not clearly divest the federal courts of jurisdiction, it therefore merely creates concurrent state jurisdiction. This would be unnecessary and redundant, however, because concurrent jurisdiction of state courts is presumed. See Tafflin v. Levitt, 493 U.S. 455, 459, 107 L. Ed. 2d 887, 110 S. Ct. 792 (1990); Erienet, 156 F.3d at 517.

Defendant further argues that, notwithstanding the lack of any explicit reference to federal jurisdiction in the provision, jurisdiction is nonetheless present pursuant to the "federal question" statute, 28 U.S.C. § 1331 (providing federal subject matter jurisdiction for cases "arising under the Constitution, laws or treaties of the United States"). [HN8]The scope of jurisdiction granted under § 1331, however, is narrower than the constitutional grant of jurisdiction. [*9] See Verlinden B.V. v. Central Bank of Nigeria, 461 U.S. 480, 495, 76 L. Ed. 2d 81, 103 S. Ct. 1962 (1983). In addition to demonstrating that the action "arises under" federal law, the moving party must show that § 1331 jurisdiction is not precluded by a statute vesting jurisdiction elsewhere. See Erienet, 156 F.3d at 518 (citing Connors v. Amax Coal Co., Inc., 858 F.2d 1226, 1229-30 (7th Cir. 1988)). Congress has the power to assign jurisdiction to courts other than the inferior federal courts. See Lockerty v. Phillips, 319 U.S. 182, 87 L. Ed. 1339, 63 S. Ct. 1019 (1943)("The Congressional power to ordain and establish inferior federal courts includes the power of investing them with jurisdiction either limited, concurrent, or exclusive, and of withholding jurisdiction from them in

the exact degrees and character which to Congress may seem proper for the public good.") Id. at 187.

[HN9]Usually, a federal question exists if federal law creates the cause of action. Franchise Tax Board v. Construction Laborers Vacation Trust, 463 U.S. 1, 27-28, 77 L. Ed. 2d 420, 103 S. Ct. 2841 (1983). In [*10] certain circumstances, however, the Supreme Court has found that even statutes which create a cause of action do not create a *federal* cause of action. See Shoshone Mining Co. v. Rutter, 177 U.S. 505, 513, 44 L. Ed. 864, 20 S. Ct. 726 (1900); Merrell Dow Pharmaceuticals Inc., v. Thompson, 478 U.S. 804, 814 n.12, 92 L. Ed. 2d 650, 106 S. Ct. 3229 (1986); Int'l Science, 106 F.3d at 1154. In Shoshone, the Court based its decision on its finding of Congressional intent that adverse mining claims filed pursuant to a federal statute be litigated in state courts. Shoshone, 177 U.S. at 511. Similarly, as demonstrated above, Congress intended the TCPA to create a cause of action for litigation at the state level. The "federal question" statute therefore does not provide federal jurisdiction for private causes of action under the TCPA.

Defendant argues that repeal of jurisdictional provisions by implication is disfavored; and therefore the Court should not interpret the TCPA to repeal the "federal question" statute. See Felker v. Turpin, 518 U.S. 651, 659-63, 135 L. Ed. 2d 827, 116 S. Ct. 2333 (1996). [*11] In this case, however, federal jurisdiction is not present to begin with under the "federal question" statute, and therefore the TCPA is not repealing any previous grant of jurisdiction. 28 U.S.C. § 1331.

Finally, Defendant argues that finding exclusive state court jurisdiction will create constitutional concerns, citing the basic tenet that interpretations that would render a statute unconstitutional are to be avoided. Public Citizen v. U.S. Dep't of Justice, 491 U.S. 440, 465-66, 105 L. Ed. 2d 377, 109 S. Ct. 2558 (1989). However, granting jurisdiction solely to the states does not render this act unconstitutional. Exclusive state jurisdiction violates neither the 10th nor the 5th Amendments.

[HN10]The 10th Amendment prohibits Congress from "commandeering" state resources, U.S. Const., amend. X; New York v. United States, 505 U.S. 144, 120 L. Ed. 2d 120, 112 S. Ct. 2408 (1992). By creating a federal right and requiring the states to enforce the federal law, the TCPA does not commandeer the states' resources but rather provides a mechanism by which private causes of action may be brought in state courts.

See Int'l Science, 106 F.3d at 1157. [*12] State courts are already bound to enforce federal claims when a cause of action exists. U.S. Const., art. VI; Testa v. Katt, 330 U.S. 386, 91 L. Ed. 967, 67 S. Ct. 810 (1947).

In this case, [HN11]the TCPA does not require the states to hear the private causes of action unless it is "permitted by the laws or rules of court of a State." 47 U.S.C. § 227(b)(3). The states therefore retain the ultimate decision whether or not to permit the suits to be brought in state court. Rather than commandeering state resources, this arrangement respects the states' sovereignty: "Congress enacted the TCPA to assist states where they lacked jurisdiction; it empowered states themselves to enforce the TCPA in federal court; it authorized private enforcement exclusively in state courts; and it recognized state power to reject Congress' authorization." Int'l Science, 106 F.3d at 1158.

Nor does [HN12]exclusive state jurisdiction violate the 5th Amendment equal protection guarantee. U.S. Const. amend. V. While certain states may opt not to adopt state laws permitting these private actions, the substantive right to be free from unsolicited faxes remains enforceable [*13] by state attorneys general or the FCC regardless of the availability of a private cause of action. See Int'l Science, 106 F.3d at 1156. Furthermore, as the Fourth Circuit pointed out, the classification is not based on a fundamental right or impermissible characteristic, and thus is subject only to rational basis review. Under this standard, the legislative classification is presumed valid if it is rationally related to a legitimate governmental interest. U.S. v. Smith, 171 F.3d 617, 624 (8th Cir. 1999). Permitting states to decide whether or not to enact enabling legislation is rationally related to Congress' legitimate interest in not overburdening federal and state courts with millions of potential claims, and thus the equal protection guarantee is not violated. See Pub. L. No. 102-243, § 2(3), 105 Stat. 2394 (1991). The fact that this may leave some victims of the practice without a private cause of action does not change the analysis.

[HN13]The Telephone Consumer Protection Act grants exclusive jurisdiction for private rights of action to state courts, and therefore this Court does not have subject matter jurisdiction over the instant claim.

[*14] ORDER

Accordingly, based on the foregoing and all the files,

Page 6

2000 U.S. Dist. LEXIS 20630, *14

records, and proceedings herein, IT IS HEREBY
ORDERED THAT

Plaintiff's motion to remand this action to state court
is GRANTED.

Dated: 10-18-00

Michael J. Davis

United States District Court Judge

`LEXSEE



Caution
As of: Feb 21, 2011

EL PASO CORPORATION, Respondent–Appellee, v. LA COMISION
EJECUTIVA HIDROELECTRICA DEL RIO LEMPA, Movant–Appellant. v.
ROBERT HART, Movant-Appellee.

No. 08-20771

UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

341 Fed. Appx. 31; 2009 U.S. App. LEXIS 17596

August 6, 2009, Filed

**NOTICE:** PLEASE REFER TO FEDERAL RULES OF APPELLATE PROCEDURE RULE 32.1 GOVERNING THE CITATION TO UNPUBLISHED OPINIONS.

**PRIOR HISTORY:** [**1]
Appeal from the United States District Court for the Western District of Texas. USDC No. 4:08-MC-335. La Comision Ejecutiva Hidroelectrica Del Rio Lempa v. El Paso Corp., 617 F. Supp. 2d 481, 2008 U.S. Dist. LEXIS 94395 (S.D. Tex., 2008)

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Appellant, an El Salvadoran utility company (foreign company), sought judicial review of the denial by the United States District Court for the Western District of Texas of its request for discovery for use in a private international arbitration proceeding pursuant to 28 U.S.C. § 1782. Appellee, a pipeline company, moved to dismiss the appeal as moot.

**OVERVIEW:** The foreign company sought to obtain discovery from a party in the United States for use in a private international arbitration in Geneva, Switzerland. It ex parte § 1782 application were granted. The Fed. R. Civ. P. 60(b) motion by the pipeline company and an individual were granted. In support of its motion to

dismiss, the pipeline company argued that the evidentiary hearing for the arbitration had concluded and the arbitration panel had closed the evidence, the discovery the foreign company sought could no longer be used in the arbitration, and there was no longer a live case or controversy. Under the United Nations Commission on International Trade Law a mechanism existed for the foreign company to introduce the evidence in the Swiss arbitral tribunal. As to the grant of the Rule 60(b), the district court relied on the holding in the Biedermann decision that § 1782 did not apply to a private international arbitral tribunal. The foreign company argued unsuccessfully that the Biedermann decision was no longer controlling in light of the Intel decision.

**OUTCOME:** The pipeline company's motion to dismiss the appeal as moot was denied, and the district court's grant of the Rule 60(b) motion was affirmed.

**CORE TERMS:** arbitration, tribunal, discovery, arbitral, moot, evidentiary hearing, uncitral, deposition, reopen, discovery requests, ex parte applications, reconsideration, invalidity, expedited, domestic

**LexisNexis(R) Headnotes**

341 Fed. Appx. 31, *; 2009 U.S. App. LEXIS 17596, **1

*International Law > Dispute Resolution > Arbitration & Mediation > General Overview*
*International Trade Law > Dispute Resolution > Arbitration*
[HN1]Under the United Nations Commission on International Trade Law's (UNCITRAL) arbitration rules, an arbitral tribunal may, if it considers it necessary owing to exceptional circumstances, decide, on its own motion or upon application of a party, to reopen the hearings at any time before the award is made. UNCITRAL Arb. R. Art. 29(2) (1976).

*Civil Procedure > Judicial Officers > Judges > Discretion*
*Civil Procedure > Judgments > Relief From Judgment > Excusable Neglect & Mistakes > General Overview*
*Civil Procedure > Judgments > Relief From Judgment > Extraordinary Circumstances*
[HN2]An appellate court reviews the decision to grant a Fed. R. Civ. P. 60(b) motion for abuse of discretion. Such a motion can be granted for a number of reasons, including mistake, inadvertence, surprise, or excusable neglect and any other reason that justifies relief. A trial judge is permitted, in his discretion, to reopen a judgment on the basis of an error of law. Fed. R. Civ. P. 60(b)(1) and (6).

*Civil Procedure > Discovery > General Overview*
*International Law > Dispute Resolution > Arbitration & Mediation > General Overview*
*International Trade Law > Dispute Resolution > Arbitration*
[HN3]A tribunal within the meaning of 28 U.S.C.S. § 1782 does not include a private international arbitral tribunal, and thus § 1782 does not apply to discovery sought for use in such a tribunal.

*Civil Procedure > Discovery > General Overview*
*International Law > Dispute Resolution > Arbitration & Mediation > General Overview*
*International Trade Law > Dispute Resolution > Arbitration*
[HN4]In the Intel decision, the United States Supreme Court held that the Commission of European Communities (Commission) qualified as a tribunal within the meaning of 28 U.S.C.S. § 1782 and that a district court was not categorically barred from ordering discovery for use in a proceeding before the Commission,

even though the proceeding was not yet pending or imminent. The question of whether a private international arbitration tribunal also qualified as a tribunal under § 1782 was not before the United States Supreme Court.

*Civil Procedure > Discovery > General Overview*
*International Law > Dispute Resolution > Arbitration & Mediation > General Overview*
*International Trade Law > Dispute Resolution > Arbitration*
[HN5]None of the concerns raised in the Biedermann decision regarding the application of 28 U.S.C.S. § 1782 to private international arbitrations were at issue or considered in the Intel decision. In the Biedermann decision, the court noted that § 1782 authorizes broader discovery than what is authorized for domestic arbitrations by Federal Arbitration Act § 7. If § 1782 were to apply to private international arbitrations, the differences in available discovery could create an entirely new category of disputes concerning the appointment of arbitrators and the characterization of arbitration disputes as domestic, foreign, or international. Additionally, empowering parties in international arbitrations to seek ancillary discovery through federal courts could destroy arbitration's principal advantage as a speedy, economical, and effective means of dispute resolution if the parties succumb to fighting over burdensome discovery requests far from the place of arbitration. Neither private arbitration nor those questions were at issue in the Intel decision.

*Governments > Courts > Judicial Precedents*
[HN6]An appellate court cannot overrule the decision of a prior panel unless such overruling is unequivocally directed by controlling United States Supreme Court precedent.

**COUNSEL:** For LA COMISION EJECUTIVA HIDROELECTRICA DEL RIO LEMPA, Movant - Appellant: David Michael Orta, Mara Vanessa Senn, Arnold & Porter, Washington, DC; Andrew Lee Pickens, Angus Joseph Dodson, Gibbs & Bruns, L. L. P., Houston, TX.

For ROBERT HART (# 1182520, C-3), Movant - Appellee: Paul Joseph Dobrowski, Charles Gerard Harrison, Dobrowski & Associates, Houston, TX.

For EL PASO CORP, Respondent - Appellee: Adam P.

Schiffer, Houston, TX; Basil Paul Nichols, El Paso Energy Corp, Houston, TX.

For NEJAPA POWER COMPANY LLC, Amicus Curiae: Joy M. Soloway, Charles Mark Baker, Kevin Michael O'Gorman, Andrew Paul Price, Fulbright & Jaworski, L.L.P., Houston, TX.

DANIEL J. ROTHSTEIN, Amicus Curiae, Pro se, New York, NY.

JUDGES: Before DAVIS, OWEN, and HAYNES, Circuit Judges.

OPINION

[*31] PER CURIAM: *

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

La Comision Ejecutiva Hidroelectrica Del Rio Lempa (CEL) appeals the district court's denial of its request for discovery for use in a private [**2] international arbitration [*32] proceeding pursuant to 28 ·U.S.C. § 1782. We affirm.

I

CEL brought this suit to obtain discovery from a party in the United States for use in a private international arbitration in Geneva, Switzerland. The arbitration involves a contractual dispute between CEL, a state-owned utility company in El Salvador, and Nejapa Power Company (NPC), a utility company that contracted to construct a power plant and provide power to CEL for twenty years. Appellee El Paso Corporation is a company related to NPC from whom CEL seeks discovery for use in the arbitration. The arbitration is being conducted pursuant to the parties' agreement under the United Nations Commission on International Trade Law (UNCITRAL) arbitration rules, El Salvadoran substantive law, and Swiss procedural law.

The Swiss arbitral tribunal rejected CEL's request for broad discovery and issued an order limiting document production to those papers that were "relevant and material to the outcome of the case." The arbitral tribunal also established a time line for serving document requests

and issuing rulings on any objections. At the same time, CEL filed ex parte § 1782 applications in two federal district [**3] courts, one in the District of Delaware and one in the Southern District of Texas, to obtain production of documents and depositions. The Texas application sought depositions from three El Paso employees, as well as Robert Hart, a legal representative for a company acquired by El Paso.

Both district courts granted the ex parte § 1782 applications, and CEL issued document production requests and deposition subpoenas to El Paso and Hart. Up until this point, El Paso, Hart, NPC, and the arbitral tribunal had not been informed of the § 1782 applications. El Paso and Hart filed motions for protection and reconsideration in the Texas district court arguing that CEL made material misrepresentations in its application and failed to apprise the court of Second and Fifth Circuit authority directly on point. The arbitral tribunal issued an order expressing its views on the § 1782 application, noting that it was not receptive to these discovery efforts.

The Texas district court granted El Paso and Hart's motions for reconsideration, which it treated as a Rule 60(b) motion for relief from a judgment or order; vacated its ex parte order; and quashed the outstanding discovery requests. Relying on the [**4] Fifth Circuit's precedent in Republic of Kazakhstan v. Biedermann International, [1] the court held that § 1782 did not apply to discovery for use in a private international arbitration. The court also held that, even if it did have the authority under § 1782, "it would not [grant the application], out of respect for the efficient administration of the Swiss arbitration."

1   168 F.3d 880 (5th Cir. 1999).

CEL appealed the Texas district court's grant of the Rule 60(b) motion and moved for an expedited appeal, arguing that the appeal may be rendered moot if the evidentiary hearing for the arbitration were to take place before the court ruled. This court denied the motion for expedited appeal. Subsequently, the evidentiary hearing in the arbitration concluded, after which the arbitral tribunal closed the evidence. El Paso then filed a motion to dismiss the appeal as moot, which was carried forward with the appeal.

II

In its motion to dismiss the appeal as moot, El Paso

341 Fed. Appx. 31, *32; 2009 U.S. App. LEXIS 17596, **4

argues that because the evidentiary hearing for the arbitration has [*33] concluded and the arbitration panel has closed the evidence, the discovery CEL seeks with its § 1782 application can no longer be used in the arbitration and there [**5] is no longer a live case or controversy. This circuit has never addressed the issue of mootness with respect to a request for discovery under § 1782. The Second Circuit has held that, where the proceeding in which the discovery is to be used has already concluded such that the § 1782 discovery can no longer be used in the proceeding, the appeal of a § 1782 application becomes moot. [2]

> 2  See In re Application of Ishihara Chem. Co., 251 F.3d 120 (2d Cir. 2001); Euromepa, S.A. v. R. Esmerian, Inc. (In re Application of Euromepa), 154 F.3d 24 (2d Cir. 1998).

In In re Application of Ishihara Chemical Co., for example, the Second Circuit held that an appeal of the district court's denial of a § 1782 application seeking evidence for use in a Japanese patent invalidity proceeding became moot when the evidentiary hearing in the proceeding concluded while the appeal was pending. [3] But unlike in Ishihara, in which it was clear to the court that the § 1782 movant had no means of using the evidence in the invalidity proceeding after the evidentiary hearing had closed, [4] here, a mechanism exists for CEL to introduce the evidence in the Swiss arbitral tribunal. [HN1]Under UNCITRAL arbitration rules, an "arbitral [**6] tribunal may, if it considers it necessary owing to exceptional circumstances, decide, on its own motion or upon application of a party, to reopen the hearings at any time before the award is made." [5] If CEL discovers new evidence from its § 1782 application, it may ask the arbitral tribunal to reopen the evidentiary hearing to consider the evidence. Though this might be unlikely given the arbitral tribunal's expressed disapproval of CEL's discovery efforts in the United States, the possibility is enough to prevent the appeal from becoming moot. Having concluded that a live case or controversy still exists, we will address the merits of the appeal.

> 3  In re: Ishihara, 251 F.3d at 126.
> 4  Id.
> 5  UNCITRAL Arb. R. Art. 29(2) (1976), available at http://www.uncitral.org/uncitral/en/unci tral_texts/arbitration/1976Arbitration_r ules.html.

**III**

[HN2]We review the decision to grant a Rule 60(b) motion for abuse of discretion. Such a motion can be granted for a number of reasons, including "mistake, inadvertence, surprise, or excusable neglect" and "any other reason that justifies relief." [6] "The law of this circuit permits a trial judge, in his discretion, to reopen a judgment on the basis of an error of law." [**7] [7]

> 6  FED. R. CIV. P. 60(b)(1), (6).
> 7  Fed. Deposit Ins. Corp. v. Castle, 781 F.2d 1101, 1104 (5th Cir. 1986) (quoting Fackelman v. Bell, 564 F.2d 734, 736 (5th Cir. 1977)).

In Republic of Kazakhstan v. Biedermann International, we held that [HN3]a "tribunal" within the meaning of § 1782 did not include a private international arbitral tribunal, and thus § 1782 did not apply to discovery sought for use in such a tribunal. [8] The district court relied on this holding in denying CEL's § 1782 application. CEL argues that Biedermann is no longer controlling in light of the Supreme Court's decision in Intel Corp. v. Advanced Micro Devices, Inc. [9] We disagree.

> 8  168 F.3d 880 (5th Cir. 1999).
> 9  542 U.S. 241, 258, 124 S. Ct. 2466, 159 L. Ed. 2d 355 (2004).

[HN4]In Intel, the Supreme Court held that the Commission of European Communities qualified as a "tribunal" within the [*34] meaning of § 1782 and that a district court was not categorically barred from ordering discovery for use in a proceeding before the Commission, even though the proceeding was not yet pending or imminent. [10] The question of whether a private international arbitration tribunal also qualifies as a "tribunal" under § 1782 was not before the Court. The only mention of arbitration in [**8] the Intel opinion is in a quote in a parenthetical from a law review article by Hans Smit. That quote states that "the term 'tribunal' . . . includes investigating magistrates, administrative and arbitral tribunals, and quasi-judicial agencies, as well as conventional civil, commercial, criminal, and administrative courts." [11] Nothing in the context of the quote suggests that the Court was adopting Smit's definition of "tribunal" in whole.

> 10  Id. at 258-59.
> 11  Id. at 258.

Moreover, [HN5]none of the concerns raised in *Biedermann* regarding the application of § 1782 to private international arbitrations were at issue or considered in *Intel*. In *Biedermann*, this court noted that § 1782 authorizes broader discovery than what is authorized for domestic arbitrations by Federal Arbitration Act § 7. [12] If § 1782 were to apply to private international arbitrations, "the differences in available discovery could 'create an entirely new category of disputes concerning the appointment of arbitrators and the characterization of arbitration disputes as domestic, foreign, or international.'" [13] We also noted that empowering parties in international arbitrations to seek ancillary discovery through federal courts [**9] could destroy arbitration's principal advantage as "a speedy, economical, and effective means of dispute resolution" if the parties "succumb to fighting over burdensome discovery requests far from the place of arbitration." [14] Neither private arbitration nor these questions were at issue in *Intel*.

12 *Biedermann,* 168 F.3d at 883.

13 *Id.* (quoting *National Broad. Co. v. Bear Stearns & Co.,* 165 F.3d 184, 188-90 (2d Cir. 1999)).

14 *Id.*

Because [HN6]"[w]e cannot overrule the decision of a prior panel unless such overruling is *unequivocally* directed by controlling Supreme Court precedent," [15] we remain bound by our holding in *Biedermann.* Therefore the district court did not abuse its discretion in granting El Paso's Rule 60(b) motion.

15 *Cain v. Transocean Offshore USA, Inc.,* 518 F.3d 295, 300 (5th Cir. 2008) (quoting *United States v. Zuniga-Salinas,* 945 F.2d 1302, 1306 (5th Cir. 1991)).

* * *

For these reasons, we DENY El Paso's motion to dismiss the appeal as moot and AFFIRM the district court's grant of the Rule 60(b) motion.

LEXSEE



Caution
As of: Feb 21, 2011

GLAXO, INC., GLAXO GROUP LIMITED, and ALLEN AND HANBURYS
LIMITED, Plaintiffs -against- BOEHRINGER INGELHEIM CORPORATION, and
BOEHRINGER INGELHEIM CHEMICALS, INC., Defendants.

No. 3: 95-CV-01342(GLG)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

1996 U.S. Dist. LEXIS 17828; 40 U.S.P.Q.2D (BNA) 1848

October 7, 1996, Decided
October 8, 1996, FILED

**DISPOSITION:**      [*1] Defendants' objection to
Plaintiffs' Second Request for Production of Documents
on timeliness grounds overruled, and, Plaintiffs' Second
Motion to Compel production of documents in the
possession of Defendants' affiliated corporations
DENIED in part.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendants, corporations
alleged to have infringed the patent of plaintiff patent
owners, filed an objection to the patent owners' second
request for production of documents on timeliness
grounds and the patent owners filed a motion to compel
production of documents in the possession of the alleged
infringers' affiliated corporations.

**OVERVIEW:** The alleged infringers contended that the
second request for production was untimely in that their
response was not due until after the discovery cut-off date
and further that it called for the production of documents
in the possession of non-parties, albeit affiliated
corporations. The patent owners responded that these
documents should have been produced in response to the
document request appended to their Fed. R. Civ. P.
30(b)(6) deposition notice. They also argued that

although some of the documents might be in the
possession of affiliated corporations, the alleged
infringers had control over these documents. The court
found that many of the documents requested by the patent
owners were covered by the requests accompanying their
Rule 30(b)(6) deposition notice and further that the
alleged infringers could have responded within the
discovery deadline. However, the court held that the
patent owners had failed to meet their burden of
establishing that the alleged infringers had control over
documents in the possession of their affiliated
corporations. The mere fact that the documents were in
the possession of a parent or sister corporation did not
automatically establish control.

**OUTCOME:** The court overruled the alleged infringers'
timeliness objection to the patent owners' second request
for production of documents, and denied the patent
owners' motion to compel production of documents in the
possession of the alleged infringers' affiliated
corporations except to extent that such documents were in
the alleged infringers' possession.

**CORE TERMS:** sister, affiliate, discovery, responsive,
timeliness, production of documents, alter ego,
subsidiary, non-party, requisite, hydrochloride, ranitidine,
burden of establishing, affiliated, deposition, objected,

Page 1

untimely, responding, entities, subject to discovery, course of business, failed to meet, custody, lawsuit, notice, act of infringement, discovery request, requested documents, supplying, cut-off

**LexisNexis(R) Headnotes**

*Civil Procedure > Discovery > Methods > Requests for Production & Inspection*
*Evidence > Documentary Evidence > Writings > General Overview*
[HN1]Fed. R. Civ. P. 34(a) provides that a party may serve a request for the production of documents that are in the possession, custody or control of the party upon whom the request is served. The term "control" is broadly construed by the federal courts, in keeping with the liberal standards of discovery in the Federal Rules of Civil Procedure. A party may not object to a request to produce on the ground that it does not possess the documents if the documents remain in its "control" such that the party has the right, authority, or ability to obtain the documents upon demand.

*Civil Procedure > Discovery > Methods > Requests for Production & Inspection*
[HN2]The mere fact that the documents are in the possession of a party's parent or sister corporation does not automatically establish control by the party. In determining whether a party has control over documents in the possession of a related corporation, the courts have applied two different tests - one for documents in the possession of a sister corporation; and one for documents in the possession of a parent corporation - for purposes of deciding whether to order production under Fed. R. Civ. P. 34.

*Business & Corporate Law > Corporations > Shareholders > Disregard of Corporate Entity > Alter Ego > General Overview*
*Civil Procedure > Discovery > Methods > Requests for Production & Inspection*
[HN3]Where the relationship between the two affiliated corporations is that of sister corporations, the requisite control for purposes of requiring a party to produce documents under Fed. R. Civ. P. 34 has been found generally only on alter ego grounds.

*Business & Corporate Law > Corporations > Shareholders > Disregard of Corporate Entity > Alter Ego > General Overview*
*Civil Procedure > Discovery > Methods > Requests for Production & Inspection*
[HN4]Where the relationship between two corporations is that of parent and subsidiary, and documents of the parent are sought from the subsidiary, control has been found in a broad range of circumstances, including where one acts as the alter ego of the other so as to warrant piercing the corporate veil; where one acted as the agent of the other with respect to the transaction that is the subject of the lawsuit; where there is access to the documents in the ordinary course of business; and where the subsidiary corporation was the marketer and servicer of the parent's product that is the subject of the lawsuit.

**COUNSEL:** For GLAXO, INC, plaintiff: John C. Yavis, Jr., Michael J. Donnelly, Murtha, Cullina, Richter & Pinney, Hartford, CT. Stephen B. Judlowe, Ira B. Winkler, Brad S. Needleman, James M. Bollinger, Dennis J. Mondolino, Jeffrey A. Hovden, Lynne A. Borchers, Hopgood Calimafde Kalil Et Al, New York, NY USA. For GLAXO,, INC, ALLEN & HANSBURY LTD, plaintiffs: John C. Yavis, Jr., Michael J. Donnelly, Murtha, Cullina, Richter & Pinney, Hartford, CT. Stephen B. Judlowe, Ira B. Winkler, Dennis J. Mondolino, Jeffrey A. Hovden, Lynne A. Borchers, Hopgood Calimafde Kalil Et Al, New York, NY.

FOR BOEHRINGER INGELHEIM CORP., defendant: Edward F. Hennessey, Robinson & Cole, Hartford, CT USA. Joseph L. Clasen, Robinson & Cole, Stamford, CT USA. Thomas A. Beck, Carol E. Rozek, Martin B. Pavane, Myron Cohen, Christa Hildebrand, Michael C. Stuart, Cohen, Pontani, Lieberman & Pavane, New York, NY. For BOEHRINGER INGELHEIM CHEMICALS, INC., defendant: Edward F. Hennessey, Robinson & Cole, Hartford, CT USA. Joseph L. Clasen, Robinson & Cole, Stamford, CT USA. Thomas A. Beck, Carol E. Rozek, Martin B. Pavane, Myron Cohen, Christa Hildebrand, Cohen, Pontani, Lieberman & Pavane, New York, NY.

For GLAXO, INC, ALLEN & HANSBURY LTD, counter-defendants: John C. Yavis, Jr., Michael J. Donnelly, Murtha, Cullina, Richter & Pinney, Hartford, CT USA.

**JUDGES:** GERARD L. GOETTEL, U.S.D.J.

**OPINION BY:** GERARD L. GOETTEL

**OPINION**

*Memorandum Decision*

Plaintiffs have filed a motion to compel (Doc. # 94) Defendants to respond to Plaintiffs' Second Request for Production of Documents, served on May 23, 1996, and to compel production of other documents which they contend were improperly withheld on the claim of attorney/client and/or work-product privilege. The latter portion of this motion was subsequently withdrawn by Plaintiffs, and, therefore, this portion is DENIED as moot. For the reasons set forth below, Defendants' objection to responding to Plaintiffs' Second Request for Production on timeliness grounds is overruled. The remaining portion of Plaintiffs' motion seeking to compel Defendants to produce documents in the possession of affiliated corporations is DENIED.

*DISCUSSION*

Defendants have objected to responding to the Second Request for Production on two grounds: (1) that it was untimely [*2] in that their response was not due until after the discovery cut-off of June 15, 1996; and (2) that it calls for the production of documents in the possession of non-parties located outside the United States, albeit entities related to the Defendants. They state:

> Glaxo's Second Request for Production of Documents is untimely, as it calls for responses after the June 15 discovery cut-off date. Had the discovery request been directed solely to the defendants in this action, we might have considered responding. Indeed, we expect that we have already produced all responsive documents from the defendants' files. However, it appears clear that the purpose of these discovery requests is to elicit discovery from Pharma-Investment Limited and Boehringer's "Spanish affiliate". [1] Both [of] (sic) these entities are outside of the United States and we have no intention, at this late date, of searching their files for responsive documents. Indeed, even if the request had

been timely it is likely that these entities would not be subject to discovery to the same extent as parties to this action.

1    "Boehringer's Spanish affiliate", Boehringer Ingelheim Espana, S.A., (also referred to by the parties as "BI Spain") is located in Malgrat, Spain. Pharma-Investment Limited is located in Toronto, Canada, and is represented by Defendants to be a part owner of Defendant Boehringer Ingelheim Corporation. Defendants state that Pharma-Investment Limited is also the owner of Boehringer Ingelheim Espana, S.A., and thus Boehringer Ingelheim Espana, S.A. may be regarded as a "sister company" of Defendant Boehringer Ingelheim Corporation. The other Defendant Boehringer Ingelheim Chemicals, Inc., is wholly owned by Defendant Boehringer Ingelheim Corporation, a relationship that is not important for purposes of this motion.

[*3] Plaintiffs respond that these documents should have been produced in response to their First Request for Production of Documents, as well as in response to the document request appended to their Rule 30(b)(6) deposition notice served April 10, 1996. Further, they argue that the more specific requests included in the Second Request for Production reflect requests for documents based upon information only recently acquired through the corporate representative depositions. Lastly, they assert that, although some of the documents may be in the "possession" of related corporations, rather than the Defendants themselves, Defendants have "control" over these documents because they have the ability to obtain the documents in the normal course of business by virtue of the interlocking structure of the corporations, citing *Camden Iron and Metal, Inc. v. Marubeni America Corp., 138 F.R.D. 438 (D.N.J. 1991)*, and *Cooper Indus. Inc. v. British Aerospace, Inc., 102 F.R.D. 918 (S.D.N.Y. 1984)*.

The Second Request for Production of Documents contains a single Request No. 53, with multiple subparts, which requests Defendants to produce

> all documents in the possession, custody or control [*4] of Boehringer Ingelheim Corp. and Boehringer Ingelheim Chemicals, Inc. including documents

located at Boehringer's parent company Pharma-Investment Limited and Boehringer's Spanish affiliate company located in Malgrat, Spain which refer or relate to the following: . . .

Plaintiffs assert that the specific document requests are relevant to Defendants' section 271(e)(1) defense [2] in that they relate to the involvement of Boehringer Ingelheim Corporation with its Spanish affiliate's supplying commercial quantities of ranitidine hydrochloride to Hexal for sale in the European market. They assert:

> Although the actions of BI Spain in supplying Hexal AG with ranitidine Hydrochloride do not, by themselves, implicate United States Patent Law, the manner in which BI Spain was able to quickly gear up to commercial scale production of ranitidine hydrochloride has direct bearing on Boehringer's defense under Section 271(e)(1).

2   Section 271(e)(1) of Title 35 provides in relevant part that

> it shall not be an act of infringement to make, use, or sell a patented invention . . . solely for uses reasonably related to the development and submission of information under a Federal law which regulated the manufacture, use, or sale of drugs . . . .

In this case, Defendants are claiming that they manufactured ranitidine hydrochloride only for the purpose of their ANDA submission to the FDA.

[*5] Defendants do not dispute the relevancy of the requested documents, although they do contest Glaxo's interpretation of section 271(e)(1), maintaining that the furnishing of technical information, as opposed to actual infringing material, is not an act of infringement and hence does not destroy an affirmative defense asserted under section 271(e)(1). That issue is not before us at this time. Therefore, we address only the issues of timeliness and whether the documents in the possession of related

foreign corporations are in the "control" of Defendants.

*A. Timeliness*

To the extent that Plaintiffs' discovery request is directed to the actual parties in this litigation, the Court overrules Defendants' objection to this request on the ground that it was untimely. It appears that many of the documents requested were covered by the somewhat broader requests accompanying Plaintiffs' Rule 30(b)(6) deposition notice. Indeed, Defendants assert that they have produced all documents in their files responsive to this request. Further, Defendants could have responded within the discovery deadline, and any extension thereof is a matter within the sound discretion of the Court. Therefore, to [*6] the extent that Defendants have not already done so, they are ordered to produce all documents not otherwise objected to [3] and which have not already been produced, that are responsive to Request No. 53.

> 3   Defendants have objected to Request No. 53 on the general grounds discussed in this Order. *See* Defense Counsel's Letter of May 29, 1996, paragraph 1. By overruling Defendants' objection as to the timeliness of Plaintiffs' request, we are not foreclosing the possibility that Defendants may have other objections to producing certain documents on grounds such as attorney-client privilege, although we note that Defendants claim to have already produced all responsive, non-privileged documents.

*B. Documents in the possession of parent and sister corporations*

As to Plaintiffs' Rule 34 request directed to documents admittedly in the possession of a non-party, Plaintiffs have the burden of establishing that the documents are in the "control" of a party. [HN1]Rule 34(a), Fed. R. Civ. P., provides that a party [*7] may serve a request for the production of documents that are "in the possession, custody or control of the party upon whom the request is served." The term "control" has been broadly construed by the federal courts, in keeping with the liberal standards of discovery in the Federal Rules of Civil Procedure. *See, e.g., M.L.C. Incorporated v. North American Philips Corp., 109 F.R.D. 134 (S.D.N.Y. 1986).* A party may not object to a request to produce on the ground that it does not possess the documents if the documents remain in its "control" such that the party has

the right, authority, or ability to obtain the documents upon demand. *Scott v. Arex,* 124 F.R.D. 39 (D. Conn. 1989).

In this case, Plaintiffs have failed to meet their burden of establishing Defendants' control over these documents. [HN2]The mere fact that the documents are in the possession of a parent or sister corporation does not automatically establish "control." In determining whether a party has control over documents in the possession of a related corporation, the courts have applied two different tests - one for documents in the possession of a "sister" corporation; and one for documents in the possession of a [*8] parent corporation - for purposes of deciding whether to order production under Rule 34.

*1. Documents in the possession of Defendants' sister corporation*

We begin by considering this issue with respect to the documents in the possession of Defendants' sister Spanish corporation. Plaintiffs simply assert: "there can be no question that Boehringer can obtain documents from its Spanish sister corporation." That proposition is not as obvious to the Court as Plaintiffs assume.

In the case of *Gerling Int'l Insur. Co. v. IRS,* 839 F.2d 131, 140-41 (3d Cir. 1988), cited by both sides, the court noted that [HN3]where the relationship between the two affiliated corporations is that of sister corporations, the requisite control has been found generally only on alter ego grounds. *See also Societe Internationale Pour Participations Industrielles et Commerciales, S. A. v. Rogers,* 357 U.S. 197, 204, 2 L. Ed. 2d 1255, 78 S. Ct. 1087 (1958); *Camden Iron and Metal, Inc. v. Marubeni America Corp.,* 138 F.R.D. 438, 442 (D.N.J. 1991); *Perini America, Inc. v. Paper Converting Mach. Co.,* 559 F. Supp. 552, 553 (D. Wisc. 1983); *Alimenta (U.S.A.), Inc. v. Anheuser-Busch Corp.,* 99 F.R.D. [*9] 309, 313 (N.D. Ga. 1983). Here, there has not even been an allegation that Defendant Boehringer Ingelheim Corporation and its "Spanish affiliate" are alter egos. [4] Moreover, Defendants deny that they are, in fact, alter egos, and further assert that they are "independently run companies that act without consulting or informing the other."

[4] In their Reply, Plaintiffs allege that Defendants are engaged in an "international joint venture" with Hexal AG and "Spanish affiliates." However, even assuming this were true, the existence of a

joint venture would not establish that Defendants and their Spanish sister corporation were alter egos.

Therefore, absent further proof of the relationship between Defendant Boehringer Ingelheim Corporation and its Spanish affiliate, we cannot hold that the documents in the possession of Boehringer Ingelheim Espana, S.A., are in the "control" of a party, such that they are subject to discovery under Rule 34.

*2. Documents in the possession of Defendants' parent corporation*

[*10] [HN4]Where the relationship between two corporations is that of parent and subsidiary, and documents of the parent are sought from the subsidiary, "control" has been found in a broader range of circumstances, including where one acts as the alter ego of the other so as to warrant "piercing the corporate veil;" where one acted as the agent of the other with respect to the transaction that is the subject of the lawsuit; where there is access to the documents in the ordinary course of business; and where the subsidiary corporation was the marketer and servicer of the parent's product that is the subject of the lawsuit. *See Camden Iron and Metal, Inc. v. Marubeni America Corp.,* 138 F.R.D. at 441-42; *Gerling Int'l Insur. Co. v. IRS,* 839 F.2d at 140-41; *Cooper Indus., Inc. v. British Aerospace, Inc.* 102 F.R.D. 918, 919 (S.D.N.Y. 1984); *Afros S.P.A. v. Krauss-Maffei Corp.,* 113 F.R.D. 127 (D. Del. 1986); 8A Wright, Miller & Marcus, *Federal Practice and Procedure* § 2210 (2d ed. 1994).

Plaintiffs have alleged in conclusory fashion, without supporting documentation, only that "the requisite control over the requested documents plainly exists." Nothing more is alleged to establish [*11] that Defendant Boehringer Ingelheim Corporation, as the subsidiary corporation, has the requisite control over documents in the possession of the parent corporation Pharma-Investment Limited, to require their production, and, moreover, Defendants categorically deny that such control exists.

Accordingly, based on the information presently before the Court, we find that Plaintiffs have failed to meet their burden of establishing the requisite "control" for this Court to require production of documents in the possession of a non-party parent corporation.

Page 5

1996 U.S. Dist. LEXIS 17828, *11; 40 U.S.P.Q.2D (BNA) 1848

However, with respect to documents in the possession of either Boehringer Ingelheim Espana, S.A., or Pharma-Investment Limited, if any of the documents are also in the possession of Defendants or counsel for Defendants in this litigation, they must be produced for Plaintiffs, since these documents would be considered to be within the "control" of the Defendants under such circumstances. 8A Wright, Miller & Marcus, *Federal Practice and Procedure* § 2210 (2d ed. 1994).

Accordingly, Plaintiffs' motion to compel is DENIED insofar as it relates to documents in the possession of non-parties Boehringer Ingelheim Espana, S.A. and Pharma-Investment [*12] Limited, unless such documents are in the possession of Defendants or counsel for Defendants in this litigation absent a further showing by Plaintiffs of "control" by Defendants over the requested documents.

Therefore, Defendants' objection to Plaintiffs' Second Request for Production of Documents on timeliness grounds is overruled, and, subject to the possible exception noted above, Plaintiffs' Second Motion to Compel production of documents in the possession of Defendants' affiliated corporations is DENIED.

SO ORDERED.

Dated: October 7, 1996.

Waterbury, Connecticut.

GERARD L. GOETTEL

U.S.D.J.