LEXSEE



Analysis
As of: Feb 21, 2011

CECILIA MATOS, Plaintiff, -against- JANET RENO, Attorney General of the
United States of America, MARY JO WHITE, United States Attorney for the
Southern District of New York, REPUBLIC NATIONAL BANK OF NEW YORK,
CITIBANK, N.A., AMERICAN EXPRESS COMPANY and JOHN DOE NO. 1
through JOHN DOE NO. 5, Defendants.

96 Civ. 2974 (MBM)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF
NEW YORK

1996 U.S. Dist. LEXIS 11748

August 15, 1996, Decided
August 16, 1996, FILED

**DISPOSITION:**      [*1]  Cross-motion to dismiss
granted. Injunction perforce denied.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendants, the United
States Attorney General and the United States Attorney
for the Southern District of New York (government
defendants), filed a cross-motion to dismiss the claims
brought by plaintiff, the mistress of a former Venezuelan
president. The mistress sought to enjoin various parties,
including the government defendants, from cooperating
with a criminal investigation that was being conducted by
the government of Venezuela.

**OVERVIEW:** The mistress was a domiciliary of
Venezuela. She resided in New York and alleged that
entities in Venezuela were investigating her financial
transactions with the former president prior to and since
his ouster from office. She further claimed that
Venezuelan authorities had submitted letters rogatory to
the U.S. State Department seeking assistance in obtaining
information about the mistress from various institutions
as well as her doctor and lawyer. The government

defendants moved to dismiss for lack of subject matter
jurisdiction. The court first ruled that although the
cross-motion may not have been timely filed, defects in
subject matter jurisdiction could not be waived by
procedural default. On the merits, the court found that the
government defendants were officers of the executive
branch and that this action, which sought specific relief
against them, acting strictly as federal officials, was a suit
against the sovereign. Absent a waiver of sovereign
immunity the suit could not be maintained because of the
lack of subject matter jurisdiction.

**OUTCOME:** The court granted the government
defendants' cross-motion to dismiss and the injunction
was perforce denied.

**CORE   TERMS:**   matter   jurisdiction,   sovereign
immunity,   rogatory,   constitutional   rights,   confidential,
injunction,  cross-motion,  tribunal,  person  appointed,
taking  of  evidence,  return  date,  injunctive  relief,
appointment, depositors, prescribe, sovereign, assigned,
appoint, lawsuit, entities, mistress

**LexisNexis(R) Headnotes**

*Business & Corporate Law > Foreign Businesses > General Overview*
*Governments > Courts > Judges*
*International Law > Dispute Resolution > Service of Process*
[HN1]Pursuant to 28 U.S.C.S. § 1782(a), persons and entities involved in foreign legal proceedings, including foreign governments, may obtain evidence in the United States with the assistance of commissioners appointed by the district court.

*Civil Procedure > Discovery > Methods > Foreign Discovery*
*Governments > Courts > Judges*
*International Law > Dispute Resolution > Evidence > Assistance*
[HN2]The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced before a person appointed by the court. By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure, which may be in whole or in part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the federal rules of civil procedure.

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview*
[HN3]Defects in subject matter jurisdiction cannot be waived by procedural default. Federal courts have an independent duty to confirm that subject matter jurisdiction exists at every stage of the litigation, and

must dismiss even sua sponte if it appears at any time that subject matter jurisdiction is lacking.

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview*
*Civil Procedure > Discovery > Methods > Foreign Discovery*
*International Law > Dispute Resolution > Evidence > Assistance*
[HN4]28 U.S.C.S. § 1782(a) does not create any right of action or confer subject matter jurisdiction. Section 1782(a) merely grants district courts the power to order the taking of evidence and to appoint a commissioner to oversee that task.

*Governments > Federal Government > Employees & Officials*
[HN5]The Attorney General of the United States and the United States Attorney for the Southern District of New York, are officers of the executive branch.

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview*
*Governments > Federal Government > Claims By & Against*
[HN6]A lawsuit which seeks specific relief against an officer of the sovereign acting strictly as an official is a suit against the sovereign and absent a waiver of sovereign immunity is not maintainable because of the absence of subject matter jurisdiction.

*Governments > Federal Government > Claims By & Against*
[HN7]A waiver of the federal government's sovereign immunity must be unequivocally expressed in statutory text and will not be implied.

*Banking Law > Federal Acts > Gramm-Leach-Bliley Act*
*International Law > Dispute Resolution > Evidence > Assistance*
[HN8]Depositors have no constitutional right to confidentiality of bank records pertaining to their accounts.

1996 U.S. Dist. LEXIS 11748, *1

COUNSEL: APPEARANCES:

RICHARD H. KUH, ESQ., Warshaw Burstein Cohen Schlesinger & Kuh, LLP, (Attorney for Plaintiff), New York, New York.

MARY JO WHITE, ESQ., United States Attorney for the Southern District of New York, WENDY H. SCHWARTZ, ESQ., Assistant United States Attorney, (Attorneys for Government Defendants), New York, New York.

JUDGES: Michael B. Mukasey, U.S. District Judge

OPINION BY: Michael B. Mukasey

OPINION

OPINION AND ORDER

MICHAEL B. MUKASEY, U.S.D.J.

Cecilia Matos, the self-professed mistress of a former Venezuelan President, has sued to enjoin various parties from cooperating with a criminal investigation she believes is being conducted by the government of Venezuela. In response to her motion for an injunction, the United States Attorney General and the United States Attorney for the Southern District of New York (together, the "Government Defendants") have cross-moved to dismiss the claims against them for lack of subject matter jurisdiction. For the reasons stated below, the cross-motion to dismiss is granted. The injunction perforce is denied.

I.

Plaintiff, a domiciliary of Venezuela presently residing [*2] in New York City, is the mistress of former Venezuelan President Carlos Andres Perez. (Compl. PP 3, 16) Plaintiff and Perez are the parents of two teenage daughters. (Id. P 16) Perez was removed from office in May 1993 and currently is under house arrest in Venezuela. (Id. PP 14-15) Plaintiff alleges that "entities in Venezuela have been investigating plaintiff and her financial transactions with President Perez prior to and ever since his ouster" as President. (Id. P 14) Plaintiff believes that Venezuelan authorities have submitted letters rogatory to the United States State Department seeking assistance in obtaining financial information about plaintiff and Perez from defendants Republic National Bank, Citibank, and American Express. (Id. P 11-12) Plaintiff alleges that Venezuelan authorities also have sought "an array of personal information and documentation concerning plaintiff" from her personal physician, her lawyer, the Spence School of New York, Baylor College of Medicine, Methodist Hospital, Boston University, and Sutton Owners Corporation. (Id. P 13) Plaintiff complains that the requests "disregard [the] normally confidential relationship existing between [*3] financial institutions and their depositors" and are "overbroad." (Id. PP 20-21) Plaintiff contends also that some of the information sought is protected from disclosure by attorney-client privilege and physician-patient privilege. (Id. P 21)

The Government Defendants have moved to dismiss all claims against them for lack of subject matter jurisdiction. The other defendants do not join in the motion.

II.

[HN1]Pursuant to 28 U.S.C. § 1782(a), persons and entities involved in foreign legal proceedings, including foreign governments, may obtain evidence in the United States with the assistance of commissioners appointed by the District Court. Section 1782(a) provides, in its entirety:

[HN2]The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony [*4] or statement be given, or the document or other thing be produced before a person appointed by the court. By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure, which may be in whole or in part the practice and procedure

of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege.

28 U.S.C. § 1782(a).

Each year, the United States Department of Justice receives, either directly or through the Department of State, hundreds of requests from foreign authorities for judicial assistance. (Harris Decl. P 3) Requests for assistance typically are submitted in the form of letters rogatory. *(Id.* P 5) Requests in criminal matters [*5] are forwarded to the Justice Department's Office of International Affairs ("OIA"). *(Id.* P 4) OIA reviews each request for compliance with the criteria of 28 U.S.C. § 1782(a) and the terms of any applicable mutual legal assistance treaty or other international agreement. *(Id.* P 6) If OIA is satisfied that the request is proper, OIA will forward the request to the United States Attorney's Office for the district in which the evidence is to be taken. *(Id.* P 9) Generally, requests are confidential, and OIA does not notify actual or potential targets or subjects of investigations. *(Id.* P 10)

When a foreign authority's request for assistance arrives at the office of the United States Attorney for the Southern District of New York, the matter is assigned to an Assistant United States Attorney ("AUSA"). (Horowitz Decl. P 2) If the AUSA is satisfied that the request is proper, he will apply *ex parte* to the district court for appointment of a commissioner to take evidence pursuant to 28 U.S.C. § 1782(a). *(Id.* P 5) The district court may appoint an AUSA or a private party as commissioner. *(Id.* P 6) Unless directed otherwise, the United States Attorney's office, [*6] like OIA, keeps confidential such requests for assistance. *(Id.* P 8)

III.

After plaintiff moved for an injunction, the Government Defendants challenged subject matter jurisdiction in a cross-motion filed May 6, 1996. Plaintiff urges the court not to consider that challenge, because the cross-motion was procedurally defective. Plaintiff contends that the Government Defendants violated Local Civil Rule 3(c)(2) by serving a motion fewer than 15 days before the return date set for plaintiff's initial motion for injunctive relief. [1] However, [HN3]defects in subject matter jurisdiction cannot be waived by procedural default. *Capron v. Van Noorden, 6 U.S. (2 Cranch) 126, 126-27, 2 L. Ed. 229 (1804).* Federal courts have an independent duty to confirm that subject matter jurisdiction exists at every stage of the litigation, and must dismiss even *sua sponte* if it appears at any time that subject matter jurisdiction is lacking. *United Food & Commercial Workers Union, Local 919, AFL-CIO v. CenterMark Properties Meriden Square, Inc., 30 F.3d 298, 301 (2d Cir. 1994); see Fed. R. Civ. P. 12(h)(3).*

1   That return date was set by Judge Wood, to whom this case initially was assigned.

[*7]   Plaintiff alleges in her complaint that "jurisdiction of the Court to hear this action is based upon 28 U.S.C. § 1782(a)." (Compl. P 1) But that provision [HN4]does not create any right of action or confer subject matter jurisdiction. Section 1782(a) merely grants district courts the power to order the taking of evidence and to appoint a commissioner to oversee that task.

An additional barrier to subject matter jurisdiction over any claims against the Government Defendants is the sovereign immunity of the United States. The moving defendants here, [HN5]the Attorney General and the United States Attorney for the Southern District of New York, are officers of the executive branch. If these defendants were called on to cooperate with a foreign authority requesting judicial assistance, they would do so in their official capacities. [HN6]A lawsuit such as plaintiff's, which seeks "specific relief against an officer of the sovereign acting . . . strictly as an official is a suit against the sovereign and absent a waiver of sovereign immunity is not maintainable because of the absence of subject matter jurisdiction." *Estate of Watson v. Blumenthal, 586 F.2d 925, 929 (2d Cir. 1978).* The Supreme [*8] Court repeatedly has held that [HN7]"[a] waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text and will not be implied." *Lane v. Pena, 116 S. Ct. 2092,*

1996 U.S. Dist. LEXIS 11748, *8

2096, 135 L. Ed. 2d 486 (1996) (citations omitted). Plaintiff has identified no waiver that permits the present lawsuit.

Plaintiff argues that "sovereign immunity does not bar actions for injunctive relief to prevent Government actions violative of a plaintiff's constitutional rights." (Pl. Rep. Mem. at 20) However, plaintiff's objection to discovery under 28 U.S.C. § 1782(a) is not based on constitutional rights. The Supreme Court has held that [HN8]depositors have no constitutional right to confidentiality of bank records pertaining to their accounts. United States v. Miller, 425 U.S. 435, 440-43, 48 L. Ed. 2d 71, 96 S. Ct. 1619 (1976). Plaintiff's arguments as to applicable privileges are based on state law, not on the Constitution.

If a district court were to issue a subpoena for the taking of evidence pursuant to 28 U.S.C. § 1782(a), plaintiff might have standing as an interested party to move to quash. See, e.g., In re Letter of Request from the Crown Prosecution Serv. of the United [*9] Kingdom, 276 U.S. App. D.C. 272, 870 F.2d 686, 689 (D.C. Cir. 1989); In re Letter Rogatory from the Justice Court, Dist. of Montreal, Canada, 523 F.2d 562, 563-64 (6th Cir. 1975). But that right provides no basis for suit against the Attorney General or a United States Attorney.

* * *

Because there is no subject matter jurisdiction over the claims against the Attorney General and the United States Attorney for the Southern District of New York, all claims against defendants Reno and White are dismissed.

SO ORDERED:

Michael B. Mukasey,

U.S. District Judge

Dated: New York, New York

August 15, 1996

LEXSEE



Positive
As of: Feb 21, 2011

OPERA PLAZA RESIDENTIAL PARCEL HOMEOWNERS ASSOCIATION, a
California nonprofit corporation, OPERA PLAZA MASTER OWNERS
ASSOCIATION, a California nonprofit corporation, Plaintiffs, v. TUAN HOANG
and BETTY S. LEE-HOANG, Defendants.

No. C 02-01084 WHA

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
CALIFORNIA

2002 U.S. Dist. LEXIS 14240

July 22, 2002, Decided
July 22, 2002, Filed; July 30, 2002, Entered in Civil Docket

**SUBSEQUENT HISTORY:** Affirmed by Opera Plaza
Residential Parcel Homeowners Ass'n v. Hoang, 2004
U.S. App. LEXIS 14238 (9th Cir. Cal., July 12, 2004)

**DISPOSITION:**     [*1] Plaintiffs' second amended
complaint was DISMISSED.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff homeowners
associations sought a judicial declaration under 47 C.F.R.
1.4000(e) blessing their prohibition on defendant
homeowners' installation of satellite dishes in general
common areas. The associations also sought injunctive
relief directing the homeowners to remove a satellite dish
they erected. The court addressed whether federal
subject-matter     jurisdiction     existed     under     the
Telecommunications Act of 1996, 47 U.S.C.S. § 609 nt.

**OVERVIEW:** The court addressed whether federal
subject-matter     jurisdiction     existed     under     the
Telecommunication Act of 1996, 47 U.S.C.S. § 609 nt.
Although the statute conferred no such express
jurisdiction, under § 207 of the Act, the Federal
Communications Commission (FCC) promulgated a

regulation, 47 C.F.R. 1.4000(e), that governed such
restrictions and stated that parties could petition the FCC
or a court of competent jurisdiction for a declaratory
ruling to determine whether a particular restriction was
permissible or prohibited. The court found that only
Congress could confer subject-matter jurisdiction. The
FCC did not have the authority to enlarge subject-matter
jurisdiction. The statute evidenced no intent to create a
private cause of action. Thus, 47 C.F.R. 1.4000(e), could
not by itself, create jurisdiction. Moreover, the FCC
regulation merely permitted a party to petition the FCC
itself, or a "court of competent jurisdiction", a phrase that
begged the question of whether or not federal courts had
subject-matter     jurisdiction     in     the     first     place. The
associations' state claims did not embody a significant
federal question, and subject-matter jurisdiction could not
attach.

**OUTCOME:** The homeowners second amended
complaint was dismissed for want of subject-matter
jurisdiction. The clerk was directed to close the file and
enter a judgment of dismissal.

**CORE TERMS:** right of action, subject-matter,
state-law, satellite, federal question, homeowner, state

Page 1

law, declaratory relief, declaratory, reception, covenants, confer, satellite dishes, cause of action, breach-of-contract, impair, viewer's, Telecommunications Act, federal law, federal district, television broadcast, direct broadcast, competent jurisdiction, state claims, well-pleaded, installation, adjudicated, promulgate, preemption, preempt

**LexisNexis(R) Headnotes**

*Administrative Law > Separation of Powers > Constitutional Controls > Authority to Adjudicate > Declaratory Orders*
*Communications Law > Federal Acts > Telecommunications Act > General Overview*
[HN1]See 47 C.F.R. 1.4000(e) (2002).

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview*
[HN2]Even if both parties prefer to be in federal court, they may not confer subject-matter jurisdiction by stipulation.

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Federal Questions > General Overview*
*Communications Law > Cable Systems > U.S. Federal Communications Commission Jurisdiction*
[HN3]Federal district courts have jurisdiction over civil actions "arising under" federal law. 28 U.S.C.S. § 1331.

*Civil Procedure > Federal & State Interrelationships > Federal Common Law > General Overview*
*Governments > Legislation > Interpretation*
[HN4]The United States Supreme Court requires courts to apply a four-factor test when determining whether a statute which has not expressly created a private right of action may nevertheless have created an implied right of action. The test requires consideration of the following questions: (1) is the plaintiff one of the class for whose especial benefit the statute was enacted, that is, does the statute create a federal right in favor of the plaintiff?; (2) is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one?; (3) is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the

plaintiff?; and (4) is the cause of action one traditionally relegated to state law, in an area basically the concern of the states, so that it would be inappropriate to infer a cause of action based solely on federal law? United States Supreme Court decisions have indicated that the inquiry to be afforded the greatest weight is whether Congress intended to provide the plaintiff with a private right of action. The Ninth Circuit, however, still finds the four-factor test helpful in determining whether a statute provides a private right of action.

*Civil Procedure > Federal & State Interrelationships > Federal Common Law > General Overview*
[HN5]In the Ninth Circuit, the first factor of the four-factor test for determining whether a statute which has not expressly created a private right of action may nevertheless have created an implied right of action is satisfied when the statute contains an explicit reference to the individuals for whose benefit the statute was enacted.

*Civil Procedure > Federal & State Interrelationships > Federal Common Law > General Overview*
[HN6]Implying a private right of action on the basis of congressional silence is a hazardous enterprise, at best. The burden of proving that an implied right of action can be derived from congressional intent rests on the party who is pursuing that alleged right of action.

*Communications Law > Federal Acts > Telecommunications Act > General Overview*
[HN7]See H.R. Rep. No. 104-204 at 123-24 (1995).

*Administrative Law > Judicial Review > Standards of Review > General Overview*
*Communications Law > Broadcasting > General Overview*
*Communications Law > Cable Systems > U.S. Federal Communications Commission Jurisdiction*
[HN8]Courts properly defer to remedies put in place by Congress or by administrative agencies.

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Federal Questions > Substantial Questions*
[HN9]It is possible that a plaintiff's state claims confer jurisdiction by embodying a "substantial federal question." To determine whether a federal element in a

2002 U.S. Dist. LEXIS 14240, *1

state-law claim is sufficiently substantial, courts must evaluate the nature of the federal interest at stake.

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Federal Questions > General Overview*
*Civil Procedure > Declaratory Judgment Actions > Federal Judgments > General Overview*
[HN10]Under the "well-pleaded complaint" rule, a substantial federal question cannot be presented in the complainant's statement of what the defense of defendants would be. In other words, the plaintiffs are not entitled to anticipate a federal defense to their state claims for purposes of generating subject-matter jurisdiction.

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Federal Questions > General Overview*
*Civil Procedure > Declaratory Judgment Actions > Federal Judgments > General Overview*
*Contracts Law > Remedies > Specific Performance*
[HN11]The United States Supreme Court has warned against the invocation of federal declaratory relief to resolve disputes that are essentially matters of state law and has stated that it would turn into the federal courts a vast current of litigation indubitably arising under state law, in the sense that the right to be vindicated was state-created, if a suit for a declaration of rights could be brought into the federal courts merely because an anticipated defense derived from federal law.

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Federal Questions > General Overview*
[HN12]The United States Supreme Court has held that the presence of a federal question in a defensive argument, even when that argument preempts a state-law claim, does not overcome the paramount policies embodied in the well-pleaded complaint rule, that the plaintiff is the master of the complaint, that a federal question must appear on the face of the complaint.

**COUNSEL:** For Opera Plaza residential Parcel Homeowners Association, Plaintiff: Branden E. Bickel, Bickel & Associates, Piedmont, CA. Dawn A. Silberstein, Bickel & Associates, Piedmont, CA.

For Tuan Hoang, Betty S. Lee-Hoang, Defendants: Alison M. Crane, Bledsoe, Cathcart, Diestel & Pedersen, San Francisco, CA. Richard S. Diestel, Bledsoe, Cathcart,

Diestel & Pedersen, San Francisco, CA.

**JUDGES:** WILLIAM ALSUP, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** William H. Alsup

**OPINION**

**ORDER DISMISSING SECOND AMENDED COMPLAINT FOR LACK OF SUBJECT-MATTER JURISDICTION**

Telecommunication Act of 1996 ("1996 Act" or "Act"), Pub. L. No. 104-104, § 207, 110 Stat. 56 This order addresses whether federal subject-matter jurisdiction exists under the , to determine the validity of a homeowners-association restriction prohibiting condominium owners from installing certain satellite dishes. Although the statute confers no such express jurisdiction, Section 207 of the statute authorizes the Federal Communications Commission to promulgate regulations "to prohibit restrictions that impair a viewer's ability to receive video programming [*2] services through devices designed for over-the-air reception of television broadcast signals, multichannel multipoint distribution service, or direct broadcast satellite service."

Pursuant to the Act's directive, the FCC promulgated a regulation governing such restrictions [HN1]and stating in part:

> Parties may petition the Commission for a declaratory ruling under § 1.2 of this chapter, or a court of competent jurisdiction, to determine whether a particular restriction is permissible or prohibited under this section.

47 C.F.R. 1.4000(e) (2002).

This order holds that only Congress can confer subject-matter jurisdiction. A federal agency does not have the authority to enlarge subject-matter jurisdiction. Moreover, the FCC regulation merely permits a party to petition the FCC itself, or a "court of competent jurisdiction" -- a phrase that begs the question of whether or not federal courts have subject-matter jurisdiction in the first place. Accordingly, plaintiffs' second amended complaint is dismissed for lack of subject-matter

Page 3

2002 U.S. Dist. LEXIS 14240, *2

jurisdiction, for the reasons now set forth in detail.

\* \* \*

Plaintiffs Opera Plaza Homeowners and Master Owners Associations [*3] are California nonprofit corporations charged with enforcing the covenants, conditions and restrictions of the condominium complex where defendants reside. Plaintiffs seek a judicial declaration blessing their prohibition on homeowners installing satellite dishes in general common areas. Declaratory relief is sought pursuant to Section 1.4000(e). Plaintiffs also seek injunctive relief directing defendants to remove a satellite dish they have erected. Defendants, on the other hand, contend that the satellite policy is "illegal" and "unenforceable" pursuant to Section 1.4000(a). At a case-management conference held on June 6, 2002, oral argument was heard regarding whether this case should be adjudicated in federal court. At that conference, the Court requested that both parties submit memoranda on whether subject-matter jurisdiction exists in this action. Each party subsequently submitted memoranda. Both sides urge that jurisdiction is proper. This Court disagrees. [HN2]Although both parties prefer to be in federal court, they may not confer subject-matter jurisdiction by stipulation. _California v. LaRue_, 409 U.S. 109, 112, 34 L. Ed. 2d 342, 93 S. Ct. 390 (1972).

\* \* \*

### [*4] 1. No Cause of Action.

[HN3]Federal district courts have jurisdiction over civil actions "arising under" federal law. 28 U.S.C. 1331 (1993). The 1996 Act, however, did not authorize the FCC to expand federal subject-matter jurisdiction when promulgating its regulations. It simply stated that the FCC was to promulgate regulations "to prohibit restrictions that impair a viewer's ability to receive video programming services through devices designed for over-the-air reception of television broadcast signals, multichannel multipoint distribution service, or direct broadcast satellite service." Pub. L. No. 104-104, § 207, 110 Stat. 56 (1996). The statute evidences no intent to create a private cause of action. _Ibid._ The ensuing regulation at issue in this case, 47 C.F.R. 1.4000(e), cannot by itself, therefore, create jurisdiction. See _First Pac. Bancorp, Inc. v. Helfer_, 224 F.3d 1117, 1121 (9th Cir. 2000).

[HN4]The Supreme Court requires courts to apply a four-factor test when determining whether a statute which has not expressly created a private right of action may nevertheless have created an implied right of action. [*5] _Cort v. Ash_, 422 U.S. 66, 78, 45 L. Ed. 2d 26, 95 S. Ct. 2080 (1975). The _Cort_ test requires consideration of the following questions:

> First, is the plaintiff one of the class for whose especial benefit the statute was enacted -- that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

_Ibid._ (internal citations and quotations omitted).

Supreme Court decisions subsequent to _Cort_ have indicated that the inquiry to be afforded the greatest weight is whether Congress intended to provide the plaintiff with a private right of action. See _California v. Sierra Club_, 451 U.S. 287, 293, 68 L. Ed. 2d 101, 101 S. Ct. 1775 (1981); see also _Burgert v. Lokelani Bernice Pauahi Bishop Trust_, 200 F.3d 661, 664 (9th Cir. 2000). [*6] The Ninth Circuit, however, "still finds the four-factor test helpful in determining whether a statute provides a private right of action." _First Pac. Bancorp_, 224 F.3d at 1122.

### A. Is Plaintiff a Member of the Class for Whose Benefit the Statute was Enacted?

[HN5]In the Ninth Circuit, the first factor of the _Cort_ test is satisfied when the statute contains an explicit reference to the individuals for whose benefit the statute was enacted. _Oliver v. Sealaska Corp._, 192 F.3d 1220, 1224 (9th Cir. 1999). In _Oliver_, the _Cort_ test was applied to the Alaska Native Claims Settlement Act to determine whether that Act had created a private right of action for shareholders of corporations created under the Settlement Act. Because the statute _explicitly_ required revenue

Page 4

distribution to the shareholders, the shareholders were deemed to be individuals for whose benefit the statute was enacted.

In relevant part, the Telecommunication Act of 1996 Act required the FCC to promulgate regulations "to prohibit restrictions that impair a *viewer's* ability to receive video programming services through devices designed for over-the-air reception of [*7] television broadcast signals, multichannel multipoint distribution service, or direct broadcast satellite service." Pub. L. No. 104-104, § 207 (emphasis added). Because the Act mentions "viewers," defendants in the instant case may be members of the class for whom the statute was created. The *Cort* factors, however, are concerned with implied remedies available to plaintiffs, not defendants. *See* 422 U.S. at 78. If anything, the effect of the broad language of the 1996 Act is to limit, not increase, plaintiffs' ability to enforce its satellite policy. Such a limitation on plaintiffs' authority cannot be read as a "benefit" of the 1996 Act. *See ibid.* Because plaintiffs are not a member of the class for whose benefit the statute was created, they cannot rely upon the first *Cort* factor to argue that the FCC had the authority to expand subject-matter jurisdiction in 47 C.F.R. 1.4000(e).

**B. Is There any Indication of Congressional Intent to Create or Deny a Remedy?**

[HN6]"Implying a private right of action on the basis of congressional silence is a hazardous enterprise, at best." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 571, 61 L. Ed. 2d 82, 99 S. Ct. 2479 (1979) [*8] (citation omitted). In *Redington*, the "plain language" of the statute "weighed against implication of a private remedy." *Id. at 571.* Accordingly, the Supreme Court declined to imply a private right of action.

Furthermore, the burden of proving that an implied right of action can be derived from congressional intent rests on the party who is pursuing that alleged right of action. *Suter v. Artist M.*, 503 U.S. 347, 363-64, 118 L. Ed. 2d 1, 112 S. Ct. 1360 (1992). In *Suter*, the respondents had petitioned for declaratory relief under the federal Adoption Assistance and Child Welfare Act against the Illinois Department of Children and Family Services. Among the factors the Supreme Court considered when holding that the Child Welfare Act did not contain an implied private right of action was the fact that respondents had failed to demonstrate that Congress intended to create a private right of action in the statute.

*Id.* at 363.

Although the legislative history of Section 207 of the Telecommunication Act supports a conclusion that Congress intended the regulations promulgated thereunder to broadly preempt legislative restrictions [*9] on television reception, it is silent with regard to a private right of action. [HN7]The House Committee Report on Section 207 (then section 308) stated:

> The Committee intends this section to preempt enforcement of State or local statutes and regulations, or State or local legal requirements, or restrictive covenants or encumbrances that prevent the use of antennae designed for off-the-air reception of television broadcast signals or of satellite receivers designed for receipt of [Direct Broadcast Satellite] services. Existing regulations, including but not limited to, zoning laws, ordinances, restrictive covenants or homeowners' association rules, shall be unenforceable to the extent contrary to this section.

H.R. Rep. No. 104-204 at 123-24 (1995).

In the case at issue, not only does the plain language of the 1996 Act weigh against the creation of a private right of action, the Act's legislative intent is silent on the matter. The Supreme Court has signaled its reluctance to generate implied rights of action when Congress has been silent. *See Redington*, 442 U.S. at 571. Moreover, plaintiffs in the instant case have offered no evidence, after ample [*10] opportunity in oral and written argument before this Court, that Congress intended the FCC regulations to create a private right of action over which federal district courts would have jurisdiction. *See Suter*, 503 U.S. at 363. Plaintiffs have failed to meet their burden of proof. Under *Redington*, therefore, this Court is not in a position to imply a right of action in the 1996 Act, and plaintiffs' argument must fail the second *Cort* factor. *See* 442 U.S. at 571.

**C. Is a Private Right of Action Consistent with the Purposes of the Act?**

[HN8]"Courts properly defer to remedies put in place by Congress or by administrative agencies." *First*

*Pac. Bankcorp,* 224 F.3d at 1126. With regard to jurisdictional issues involved the instant case, the FCC promulgated 47 C.F.R. 1.4000 in response to the Act's directive to prohibit restrictions that impair a viewer's ability to receive television reception. The FCC created a private right of action pursuant to this directive that allowed "parties" to petition the FCC or a "court of competent jurisdiction" for declaratory relief. 47 C.F.R. 1.4000(e) [*11] . The crux of the matter, however, is precisely whether a federal district court is a court of "competent jurisdiction." The fourth *Cort* factor, noted immediately below, weighs against the conclusion that Congress intended federal district courts to resolve issues, such as the breach-of-contract issue before this Court, that are traditionally adjudicated in state courts.

**D. Is this cause of action traditionally relegated to state law?**

The essential issue to be resolved in the instant matter is whether defendants breached the satellite policy. Absent diversity or supplemental jurisdiction, breach-of-contract disputes are traditionally adjudicated before state courts -- courts of general jurisdiction. Plaintiffs have offered no evidence that Congress intended federal courts to adjudicate state-law breach-of-contract cases when it directed the FCC to promulgate regulations under Section 207. Such an intent is not evident in the plain language of the statute, nor can it be evinced from the legislative history of the statute. *See* Pub. L. No. 104-104, § 207; H.R.Rep. No. 104-204 at 123-24 (1995). As a result, plaintiffs have failed to satisfy this and all *Cort* factors. [*12] This Court, therefore, cannot exercise jurisdiction over the plaintiffs' claims, since they do not arise under federal law. *See* 28 U.S.C. 1331.

**2. Plaintiffs' State Claims Do Not Embody a Substantial Federal Question.**

[HN9]It is nevertheless possible that plaintiffs' state claims confer jurisdiction by embodying a "substantial federal question." To determine whether a federal element in a state-law claim is sufficiently substantial, courts must evaluate the nature of the federal interest at stake. *Merrell Dow Pharm. Inc. v. Thompson,* 478 U.S. 804, 814, 92 L. Ed. 2d 650, 106 S. Ct. 3229 (1986). This case, however, resembles nothing more than a garden-variety state-law breach-of-contract case. The federal statute is relevant to these claims only by means of the potential defense of "preemption."

[HN10]Under the "well-pleaded complaint" rule, a substantial federal question cannot be presented "in the complainant's statement of what the defense of defendants would be." *Louisville & Nashville Ry. v. Mottley,* 211 U.S. 149, 154, 53 L. Ed. 126, 29 S. Ct. 42 (1908). In other words, plaintiffs are not entitled to anticipate a federal [*13] defense to their state claims for purposes of generating subject-matter jurisdiction. By seeking declaratory relief, plaintiffs have essentially predicted defendants' defense to plaintiffs' potential state-law claims. Such an approach violates the spirit of *Mottley,* 211 U.S. at 152, 154.

Plaintiffs disagree, and assert that their claim is well-pled. They would distinguish *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 672-73, 94 L. Ed. 1194, 70 S. Ct. 876. *Phillips Petroleum,* however, is particularly instructive to the instant case, [HN11]as it warns against the invocation of federal declaratory relief to resolve disputes that are essentially matters of state law (*i.e.,* the concept of "artful pleading"):

> It would turn into the federal courts a vast current of litigation indubitably arising under State law, in the sense that the right to be vindicated was State-created, if a suit for a declaration of rights could be brought into the federal courts merely because an anticipated defense derived from federal law.

*Id.* at 673.

Like *Phillips Petroleum,* plaintiffs in the instant case should have sought remedial [*14] relief by requesting specific performance of their contract in state court. Accordingly, plaintiffs' state claims do not embody a significant federal question, and subject-matter jurisdiction cannot attach in the instant case.

Plaintiffs also argue that 47 C.F.R. 1.4000(a)(4) "preempts any state law cause of action" by "making this statutory remedy the *exclusive remedy* available to either party" (*id.* at 4-5) (emphasis added). [1] *Caterpillar Inc. v. Williams* identified this "complete preemption doctrine" as the corollary to the well-pleaded complaint rule. 482 U.S. 386, 394, 96 L. Ed. 2d 318, 107 S. Ct. 2425.

1   Plaintiffs cite 47 C.F.R. 1.4000(a)(4), which reads: "No civil, criminal, administrative, or other

legal action of any kind shall be taken to enforce any restriction or regulation prohibited by this section except pursuant to paragraph (d) or (e)" (*ibid.*). 47 C.F.R. 1.4000(d) permits local governments or associations to petition the FCC for a waiver if they can demonstrate "local concerns of a highly specified nature." The petition for declaratory judgment permitted in Section 1.4000(e) is central to the federal-jurisdiction question at issue in this memo.

[*15]   Just as petitioner's complete-preemption argument failed in *Caterpillar*, plaintiffs' preemption argument in the instant case must also fail. *Id.* at 394. In *Caterpillar*, the Supreme Court held that the presence of a federal question in a defensive argument -- even when that argument preempts a state-law claim -- "does not overcome the paramount policies embodied in the well-pleaded complaint rule -- that the plaintiff is the master of the complaint, that a federal question must appear on the face of the complaint . . . ." *Id.* at 398-99.

In the instant case, plaintiffs' posture in seeking declaratory relief is essentially "defensive," since it is, in effect, an effort to ward off a defense to plaintiffs' potential state-law breach-of-contract claim. *See id.* at 398; *see also Mottley*, 211 U.S. at 152, 154. Through such "artful pleading," plaintiffs are attempting to keep their state-law claims before this federal court, a practice discouraged by the Ninth Circuit. *See United Nat'l Ins. Co. v. R&D Latex Corp.*, 242 F.3d 1102, 1115 (9th Cir. 2001) ("Forum shopping through the filing of declaratory [*16] judgment actions is no more appropriate when it favors state over federal jurisdiction than it is when it favors the reverse."). By virtue of having adopting a defensive posture, plaintiffs' state-law claims are not preempted by 47 C.F.R. 1.4000(e).

Plaintiffs further contend that federal subject-matter jurisdiction exists in this case because either party could have brought a federal claim under 47 C.F.R. 1.4000(e) (Br. 5), and that under *Franchise Tax Bd. of California v. Constr. Laborers Vacation Trust for Southern California Franchise Tax Bd.*, 463 U.S. 1, 19, 77 L. Ed. 2d 420, 103 S. Ct. 2841 (1983), the possibility of defendants' suit creates federal jurisdiction. As discussed above, however, this Court lacks jurisdiction to hear a petition from any party in this case because the FCC lacked the authority to confer such jurisdiction.

3. State Courts Adjudicate Analogous Cases.

Defendants in the instant case admit that plaintiffs' declaratory-judgment motion is not a "necessary element" of its state-law claims (Br. 3). Defendants state that their "defense to this action, specifically, that the Association's [*17]   [sic] regulations are preempted by the Telecommunications Act, is by itself not sufficient to raise a federal question and confer jurisdiction [under the "well-pleaded complaint" rule]" (*ibid.*). Defendants also admit that "the causes of action in this case -- breach of contract, request for permanent injunction, and declaratory relief -- are created by state law" (*ibid.*). Instead, defendants' argument is that federal-court adjudication of the instant case is necessitated by unspecified "substantial questions raised regarding the proper interpretation of the Telecommunications Act" and a "powerful federal interest in seeing that the federal statute is given uniform interpretations" (*id.* at 3-4).

What defendants have overlooked, however, is that in analogous cases, state courts have been the entities called upon to interpret 47 C.F.R. 1.4000 in the course of adjudicating alleged breaches of homeowners-association covenants which restricted the installation of satellite receivers. *See, e.g., Holliday v. Crooked Creek Vill. Homeowners Ass'n*, 759 N.E.2d 1088, 1093-95 (Ind. Ct. App. 2001) (affirming that restrictions [*18] on homeowners' -- whom had been granted a favorable declaratory judgment by the FCC -- installation of multiple satellite dishes did not violate 47 C.F.R. 1.4000); *Daly v. River Oaks Place Council of Homeowners*, 59 S.W.3d 416, 419-420 (Tex. Ct. App. 2001) (affirming that homeowners association which had sued homeowner for breach of CC&Rs did not violate 47 C.F.R. 1.4000(a)(1) when restricting the installation of a satellite dish in a common area); *Belle Terre Lakes Home Owners Ass'n v. McGovern*, 805 So. 2d 1286, 1291 (La. Ct. App. 2002) (holding, contrary to the defendant's assertion, that homeowners association's covenants did not impair the installation or use of a satellite dish). [2] Like *Holliday* and other breach-of-covenant decisions that involve an analysis of 47 C.F.R. 1.4000 when that regulation has been invoked as a defense, the instant case should have its primary state-law claims adjudicated before a state court. *Cf. Town of Greenhorn v. Baker County, Oregon*, 596 F.2d 349, 353 (9th Cir. 1979) (holding that a federal district court lacked jurisdiction [*19] to issue a declaratory judgment and that the case

"turned primarily upon issues of state law in which federal courts have no particular expertise. There is no reason to believe that state courts will be hostile to the claims asserted. The reasons which support federal jurisdiction are simply not present").

> 2    These cases also serve to belie plaintiffs' "complete preemption" argument, given that these several jurisdictions have evaluated defenses that restrictive satellite covenants violated 47 C.F.R. 1.4000 while adjudicating legitimate state-law claims.

Furthermore, in *Merrell Dow*, the Supreme Court reminded the petitioner (who also expressed concerns that "a powerful federal interest" existed "in seeing that the federal statute [was] given uniform interpretations") that:

> Petitioner's concern about the uniformity of interpretation, moreover, is considerably mitigated by the fact that, even if there is no original district court jurisdiction for these kinds of action, this [*20] Court retains power to review the decision of a federal issue in a state cause of action.

478 U.S. at 815-16.

The same principle applies in the instant case. In the future, under plaintiffs' properly-pled state-law complaint, if either party is dissatisfied with the state court's interpretation of 47 C.F.R. 1.4000 as it relates to a defense against a breach-of-covenant claim, the *Merrell*

*Dow* recourse will still be available. *See* 478 U.S. at 815-816.

## CONCLUSION

The parties were afforded a full opportunity to submit briefs regarding federal subject-matter jurisdiction in this case. Having considered those briefs, the Court believes that oral argument on the matter would not be of further assistance. Plaintiffs' second amended complaint, therefore, is **DISMISSED** for want of subject-matter jurisdiction. The Clerk shall **CLOSE** the file and enter a judgment of dismissal.

**IT IS SO ORDERED.**

Dated: July 22, 2002

WILLIAM ALSUP

UNITED STATES DISTRICT JUDGE

## JUDGMENT

Pursuant to the Court's order of July 22, 2002, dismissing this action for lack of subject-matter jurisdiction, judgment [*21] of dismissal is hereby **ENTERED**. The Clerk shall **CLOSE** the file.

**IT IS SO ORDERED.**

Dated: July 22, 2002

WILLIAM ALSUP

UNITED STATES DISTRICT JUDGE