UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

In re United Company Rusal, PLC, et al.,
  Applicants,

  v.

Trafigura A.G.,
  Respondent.

No. 3:11mc17 (SRU)

## MEMORANDUM OF DECISION

  United Company Rusal, PLC and United Company Rusal Investment Management, LLC (collectively "Rusal") filed an emergency order to permit discovery for use in aid of foreign litigation pursuant to 28 U.S.C. §1782.[1] Trafigura A.G. ("Trafigura"), the party from whom discovery is sought, opposed Rusal's motion on a number of grounds and challenged the court's subject matter jurisdiction to consider the application. Trafigura argued, what appears to be a matter of first impression, that section 1782 is a procedural mechanism only and does not provide the court with subject matter jurisdiction to hear applications made thereunder. Trafigura maintains that section 1782 does not create an independent federal cause of action and that because it and Rusal are both foreign citizens, the parties are not diverse. Accordingly, in Trafigura's view, this court has no subject matter jurisdiction to consider Rusal's application.

  On February 24, 2011, after considering the merits of Rusal's application and Trafigura's objections, I issued an oral ruling granting Rusal's motion and holding that sections 1331 and 1782 of Title 28 of the United States Code vest the court with federal question jurisdiction to consider the motion. I write now to further articulate that section 1782 creates a right to

---

[1] Section 1782, titled "Assistance to Foreign and International Tribunals and to Litigations Before Such Tribunals," provides, in pertinent part, that "[t]he district court of the district in which a person resides or is found may order him . . . to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . . The order may be made pursuant to . . . the application of any interested person . . . ."

discovery under federal law and therefore the court has subject matter jurisdiction, i.e., the court has statutory power to consider the application regardless of the parties' citizenship or the presence of an underlying federal cause of action.

I.  **Background**

The following facts are taken from Rusal's motion in support of its application and are otherwise undisputed. Rusal is the world's largest producer of aluminum and alumina and owns 25% plus 1 share of the world's largest producer of nickel, OJSC MMC Norilsk Nickel ("Norilsk"). Interros International Investment ("Interros") is one of Russia's largest private investment firms and also owns 25% plus 1 share of Norilsk. Rusal and Interros are currently engaged in a battle for control of Norilsk. On December 20, 2010, two Norilsk subsidiaries, Corbiere and Raleigh, sold a percentage of their shares to a Dutch affiliate known as Trafigura Beheer BV ("TBBV"). Nine days later, the same subsidiaries repurchased those shares from TBBV at a higher price. Rusal believes that Interros and others orchestrated the sale and buy-back to place additional shares in the hands of Interros-friendly shareholders in an effort to subvert a cooperation agreement between Rusal and Interros and to force Rusal to sell its interest in Norilsk at an undervalued price.

Rusal commenced proceedings in the Krasnoyarsk Territory Arbitrazh Court in the Russian Federation against TBBV and in the London Court of International Arbitration against Interros. Rusal has also commenced proceedings in St. Kitts/Nevis against Corbiere and Raleigh. Trafigura is not a party to any of the three foreign proceedings. Rusal filed the instant application to obtain discovery in aid of each of the foreign proceedings because it believes that Trafigura, a subsidiary of TBBV, is in possession or control of information necessary to prosecute its pending claims in England, Russia, and St. Kitts/Nevis.

**II.     Discussion**

Trafigura did not cite and I could not unearth any case in which a district court held that it could consider the merits of a section 1782 request only if the parties were diverse or if their foreign dispute arose out of federal law.  Indeed, every court that has expressed any view with regard to its jurisdiction to entertain a section 1782 application remained notably silent on any requirement that a basis, other than the federal statute itself, was necessary.  *See In re Chevron Corp.,* 2011 WL 322380, *4-5 (3d Cir. 2011) ("The District Court had jurisdiction under 28 U.S.C. § 1782 . . . ."); *United States v. Devine*, 208 F.3d 215 (6th Cir. 2000) (unpublished opinion) (rejecting appellant's contention that 28 U.S.C. § 1782 did not give district court jurisdiction to honor letters rogatory); *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 189-90 (3d Cir. 1999) ("The District Court had jurisdiction [to consider a section 1782 application] under 28 U.S.C. § 1331 and 1782."); *In re Letters Rogatory from Local Court of Ludwigsburg, Federal Republic of Germany in Matter of Smith*, 154 F.R.D. 196, 199 (N.D. Ill. 1994) (faced with a challenge to its subject matter jurisdiction to consider an application brought under 1782, the court concluded that it had such jurisdiction because Congress expressly authorized courts to consider section 1782 requests); *In re Letters Rogatory from Supreme Court of Ontario, Canada*, 661 F. Supp. 1168, 1169 (E.D. Mich. 1987) ("The Court's jurisdiction is grounded on 28 U.S.C. § 1782.").

To the extent that courts have more thoroughly explored their jurisdiction to hear section 1782 applications, those courts focused the inquiry on whether the application satisfied the statute's requirements.[2]  *See In re Search of Premises Located at 840 140th Avenue, Bellevue*

---

[2] A district court has the authority to grant an application for judicial assistance if the following statutory requirements are met: (1) the person from whom discovery is sought must

*Wash.,* 2011 WL 293821, *1-2 (9th Cir. 2011) ("To invoke § 1782 and obtain federal-court assistance, the requesting entity presents a written request known as a 'letter rogatory' (or, if presented by an 'interested person,' known as a 'letter of request') to the applicable federal district court."); *Al Fayed v. C.I.A.*, 229 F.3d 272 (D.C. Cir. 2000) (holding that the United States was not a "person" within the meaning of section 1782 and therefore the court did not have the authority to order the giving of testimony or production of documents); *In re Application of Inversiones y Gasolinera Petroleos Venezuela, S. de R.L.*, 2011 WL 181311, *5 (S.D. Fla. 2011) (determining jurisdiction based solely on whether application complies with section 1782's requirements); *In re Application of Yukos Hydrocarbons Investments, Ltd.*, 2009 WL 5216951 (N.D.N.Y. Dec. 30, 2009) (jurisdiction exists "[i]n the event the three statutory requirements for invoking the court's jurisdiction under section 1782 are met . . . ."); *In re Application of Blue Oil Trading, Ltd.,* 2009 WL 3353293 (W.D.N.C. Oct. 15, 2009) ("As held in the Court's previous Order on October 5, 2009, Blue Oil has satisfied the statutory elements of §1782 and this Court has jurisdiction to order the relief requested."); *see also Application of Sumar*, 123 F.R.D. 467, 471 (S.D.N.Y. 1988) (noting that subject matter jurisdiction is lacking only where the applicant fails to satisfy section 1782's requirements that the person be found and the discovery is in aid of a foreign proceeding).

---

reside or be found in the district of the district court ruling on the application for assistance; (2) the request must seek evidence that is either the "testimony or statement" of a person or the production of "a document or other thing;" (3) the evidence must be "for use in a proceeding in a foreign or international tribunal;" and (4) the request must be made by "an interested person." 28 U.S.C. § 1782.

A.  *The Court has Subject Matter Jurisdiction to Grant the Application*

The existence of federal question jurisdiction turns on whether a claim arises under federal law. *Baker v. Carr*, 369 U.S. 186, 198 (1962). Federal courts consistently follow Justice Holmes' "classic formulation" that, with limited exception, "[a] suit arises under the law that creates the cause of action." *Bay Shore Union Free School Dist. v. Kain*, 485 F.3d 730, 735 (2d Cir. 2007), *quoting American Well Works Co. v. Layne & Bowler Co.,* 241 U.S. 257, 260 (1916). Thus, federal jurisdiction is proper where the pleading "is so drawn as to seek recovery directly under the Constitution or laws of the United States." *Bell v. Hood*, 327 U.S. 678, 681 (1946); s*ee also* 28 U.S.C. § 1331 (vesting federal district courts with original jurisdiction to hear all civil actions arising under the Constitution, laws, or treaties of the United States).[3] Thus, the test is simple: if the applicant's cause was created by federal law, it invokes federal question jurisdiction.

An action "arises under" federal law within the meaning of section 1331 if either (1) federal law creates the cause of action, or (2) the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law. *Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 27-28 (1983).

The first inquiry concerns the source of law from which Rusal's claim is derived. The operative pleading, Rusal's motion for discovery, seeks only to obtain discovery in aid of three foreign proceedings and raises no other cause of action. Trafigura has not identified, nor have I come across any law, state or federal, other than 28 U.S.C. § 1782 under which Rusal could

---

[3] Courts deviate from the Holmes test where the litigation will center on questions of state law or where litigation of state law claims entail the adjudication of significant federal issues. *Wright and Miller*, 13D Fed. Prac. & Proc. § 3562 at 184 (3d ed.). Neither exception is relevant to the instant matter.

pursue the relief it seeks; rather, the sole source of law for Rusal's application is section 1782. Section 1782, therefore, creates the right underlying the claim for discovery.[4] Second, there is no dispute that resolution of Rusal's application turns solely on whether it meets section 1782 prerequisites to relief. *See cases cited at supra pp. 2-3.* Accordingly, an application for discovery in aid of a foreign proceeding made pursuant to 28 U.S.C. § 1782 is a right to discovery that exists solely by operation of federal statute. Because the application arises under federal law, 28 U.S.C. § 1331 explicitly vests the court with subject matter jurisdiction to consider the application.

    B.    *No Other Basis of Jurisdiction is Required*

Trafigura, comparing section 1782 to the Declaratory Judgment Act and the Federal Arbitration Act, maintained that Congress crafted section 1782 as merely a procedural device for obtaining discovery and not a grant of jurisdiction to courts to consider such applications. Although Trafigura properly recites the widely accepted proposition that not every federal law acts as a gateway to federal court, *Giba v. Int'l Union of Electrical, R. & M. Workers*, 205 F.

---

[4] Trafigura concedes that Rusal's claim derives from federal law, but argues that section 1782 does not itself create a federal cause of action. In support of the argument Trafigura relies on *Matos v. Reno*, 1996 U.S. Dist. LEXIS 11748 (S.D.N.Y. Aug. 16, 1996). The holding in *Matos* is inapplicable to the circumstances of Rusal's application and does not in any way suggest that a district court must first find that it has another independent basis for jurisdiction before considering an otherwise proper application for section 1782 assistance. In *Matos* the court considered only whether section 1782 created a private right of action under which a party could enjoin the United States government. The court did not take up the question whether section 1782 provided the court subject matter jurisdiction over an application for discovery. The plaintiff in *Matos*, the purported ex-lover of the President of Venezuela, initiated an action to enjoin various entities, including the Attorney General and the U.S. Attorney for the Southern District of New York, from cooperating with a criminal investigation she believed the government of Venezuela was conducting. Matos brought her claim under section 1782 and argued that it provided the court subject matter jurisdiction over her claim. Quite properly, the court held that section 1782 authorized the district courts to assist in taking evidence, but that the limited right did not create a basis for a cause of action to preemptively challenge discovery that had not yet been sought.

Supp. 553, 555 (D. Conn. 1962) (holding that the mere fact that the Constitution or a federal law must be interpreted or applied in the course of a case does not give rise to federal question jurisdiction), Trafigura overlooks that jurisdiction is found where the right or immunity itself is federally created. *Id.* Moreover, where Congress promulgates a law but intends to limit the reach of the court's subject matter jurisdiction with respect to that statute, it does so explicitly. *Verizon Maryland, Inc. v. Public Service Com'n of Maryland*, 535 U.S. 635, 644 (2002) (holding that a federal statute's silence on the topic of subject matter jurisdiction leaves intact section 1331's jurisdictional grant and that courts shall not infer an intent to withdraw federal jurisdiction under 1331). Indeed, if Congress intended to specify in each statute the scope of the district court's jurisdiction to consider claims arising thereunder, 28 U.S.C. § 1331's explicit grant of subject matter jurisdiction over claims arising under "the laws of the United States" would be rendered entirely superfluous.

Trafigura's reliance on the Declaratory Judgment Act and Federal Arbitration Act does not bolster its argument that jurisdiction vests only where Congress explicitly provides it. Rather, reliance on those acts cuts the other way and is wholly consistent with the Supreme Court's discussion in *Verizon* that a court shall presume section 1331's federal question jurisdiction applies to a given statute unless the statute provides otherwise.[5]

    C.    *Congress Intended to Grant Jurisdiction*

A review of the statute's legislative history demonstrates that Congress intended a section 1782 application to arise under federal law and that requiring any additional jurisdictional basis

---

[5] The Declaratory Judgment Act explicitly circumscribes the court's authority to hear only matters of "actual controversy within its jurisdiction . . . ." 28 U.S.C. § 2201(a). Similarly, Congress permits district courts to consider claims brought under the Federal Arbitration only if, absent an agreement to arbitrate, the court would have had jurisdiction over the underlying matter pursuant to the provisions of title 28.

7

would frustrate the statute's stated purpose. The following recitation of the legislative history of section 1782 is drawn from the Second Circuit's decision in *Application of Malev Hungarian Airlines*, 964 F.2d 97 (2d Cir. 1992). In 1958, Congress created the Commission on International Rules of Judicial Procedure ("Commission") and instructed it to "investigate and study existing practices of judicial assistance and cooperation between the United States and foreign countries with a view to achieving improvements." Pub. L. No. 85-906, 72 Stat. 1743 (1958). Congress further instructed the Commission to use that investigation and study as a basis upon which to "draft and recommend to the President any necessary legislation" that would make more readily ascertainable, efficient, economical, and expeditious procedures for American courts to render assistance to foreign courts and quasi-judicial agencies. *Id.* On May 28, 1963, the Commission proposed a bill, including what became section 1782, and stated its hope that enactment of the proposed legislation would provide efficient means of assistance in our federal courts for litigants involved in international litigation and would prompt foreign courts to follow our generous example and provide similar assistance to our court systems. S. Rep. No. 1580, 88th Cong., 2d Sess. (1964), *reprinted in* 1964 U.S.C.C.A.N. 3782, 3792-94. The Senate Judiciary Committee concurred with and adopted the Commission's understanding of the intent behind the legislation and explained in its report:

> Until recently, the United States has not engaged itself fully in efforts to improve practices of international cooperation in litigation. The steadily growing involvement of the United States in international intercourse and the resulting increase in litigation with international aspects have demonstrated the necessity for statutory improvements and other devices to facilitate the conduct of such litigation. **Enactment of the bill into law will constitute a major step in bringing the United States to the forefront of nations adjusting their procedures to those of sister nations and thereby providing equitable and efficacious procedures**

8

> **for the benefit of tribunals and litigants involved in litigation with international aspects.**
>
> **It is hoped that the initiative taken by the United States in improving its procedures will invite foreign countries similarly to adjust their procedures.**

*Id.* at 3783 (emphasis added). These twin aims -- providing efficient means of assistance to participants in international litigation through the federal courts and encouraging foreign countries by example to provide similar means of assistance to American courts -- inform the conclusion that nothing in the legislative history indicates that Congress expected federal district courts to turn away applicants seeking discovery from non-diverse parties or when claims in the foreign litigation could not have been brought initially in our federal courts. Were I to read into the statute a requirement that the applicant first demonstrate the diversity of the parties or that an underlying federal cause of action exists in the foreign dispute, it would limit section 1782 relief to a narrow set of applicants under a narrow set of circumstances. Such a result would reduce the likelihood of reciprocity for American litigants in foreign tribunals; accordingly, I conclude such a result is contrary to Congressional intent.

**III. Conclusion**

For the reasons set forth above, and stated on the record in this matter, I expressly hold that the court has subject matter jurisdiction arising under 1782 and through the operation of section 1331 to consider Rusal's application. That application is granted for the reasons and to the extent previously ordered.

Dated at Bridgeport, Connecticut this 16th day of March 2011.

/s/ Stefan R. Underhill
Stefan R. Underhill
United States District Judge